Evan M. Newman (EN2724)
Nathan Cohen (NC0089)
Jacobowitz Newman Tversky LLP
377 Pearsall Avenue, Suite C
Cedarhurst, New York 11516
(212) 612-1110

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
MEDRITE CARE, LLC, MEDRITE 22ND LLC,
MEDRITE 72 LLC, MEDRITE
BH LLC, MEDRITE MIDTOWN WEST LLC,
and HENRY WEISS individually and
derivatively on behalf of MEDRITE CARE, LLC,
MEDRITE 22ND LLC, MEDRITE 72 LLC, MEDRITE
BH LLC and MEDRITE MIDTOWN WEST LLC,                    Case No. 1:20-cv-3456

                          Plaintiffs,                  **VERIFIED COMPLAINT**

            - against -

MEDRITE 243 LLC, MEDRITE EAST SIDE LLC
MEDRITE HAVERSTRAW LLC, MEDRITE
HOLDINGS LLC, MEDRITE LLC, MEDRITE
MANAGEMENT LLC,
LLC, MEDRITE MTVERNON LLC
MEDRITE MYRTLE LLC, MEDRITE NYC LLC,
MEDRITE SPRING VALLEY LLC, NEW MEDRITE
CARE NEW YORK INTERNATIONAL LLC, MEDRITE
41 LLC, MEDRITE MEDICAL CARE, PA, SUPREME
MEDICAL MANAGEMENT LLC and SAMUEL FISHMAN
a/k/a SAMUEL FISCH,
                          Defendants,

            - and –

MEDRITE CARE, LLC, MEDRITE 22ND LLC,
MEDRITE 72 LLC, MEDRITE BH LLC
and MEDRITE MIDTOWN WEST LLC,

                          Nominal Defendants.
----------------------------------------------------------------------x

        Plaintiffs HENRY WEISS, MEDRITE CARE, LLC, MEDRITE 22ND LLC, MEDRITE

72 LLC, MEDRITE BH LLC, and MEDRITE MIDTOWN WEST LLC individually and

directly, and HENRY WEISS derivatively on behalf of the entities MEDRITE CARE, LLC, MEDRITE 72 LLC, and MEDRITE BH LLC (collectively "Plaintiffs"), by and through their attorneys Jacobowitz Newman Tversky LLP, for their Complaint against defendants MEDRITE 243 LLC, MEDRITE EAST SIDE LLC, MEDRITE HAVERSTRAW LLC, MEDRITE HOLDINGS LLC, MEDRITE LLC, MEDRITE MANAGEMENT LLC, MEDRITE MTVERNON LLC, MEDRITE MYRTLE LLC, MEDRITE NYC LLC, MEDRITE SPRING VALLEY LLC, NEW MEDRITE CARE NEW YORK INTERNATIONAL LLC, MEDRITE 41 LLC, MEDRITE MEDICAL CARE, PA, SUPREME MEDICAL MANAGEMENT LLC and SAMUEL FISHMAN a/k/a SAMUEL FISCH (collectively, the "Defendants") allege as follows:

## NATURE OF CASE

1.      This is case about greed and fraud spiraling out of control and endangering the public.  Defendants brazenly stole millions of dollars from Plaintiffs.  Worse, they accomplished this by using Plaintiffs' assets, including Plaintiffs' money, vendor relationships, trademarks. trade dress, equipment, supplies and, perhaps most disturbingly, Plaintiffs' exclusive management relationship with Medrite Medical Care, P.C. ("MMC"), a licensed medical practice, organized as a Professional Corporation and owned by Dr. Jeffrey M. Dick ("Dr. Dick").

2.      Indeed, this is a text book case for fraud, conversion, breach of fiduciary duty, breach of contract, unjust enrichment, tortious interference and violations of the Lanham Act and analogous New York statutory and common laws, based on a pervasive scheme orchestrated by a current employee (and former Managing Member) of the Plaintiff Entities, who, acting for his own and the other defendants' benefit, literally diverted millions of dollars of assets from

Plaintiffs' business to open competing businesses using Plaintiff's brand name and other trade dress.

3.      Defendants even had the gall to advertise the competing unauthorized businesses on Plaintiffs' own website. Further investigation revealed that Defendants have caused Plaintiffs to pay for Defendants' employees, supplies, office space, and advertising and marketing expenses.

4.      To make matters worse, Defendants have exploited Plaintiffs' exclusive management relationship with MMC by, among other things, illegally using Dr. Dick's and MMC's license and insurance provider numbers in the operation of their competing businesses. Defendants' use was never authorized and jeopardizes Medrite Care's most valuable asset – the exclusive management relationship between Medrite Care and MMC. Even more troubling is the clear danger that Defendants' illegal and licensed provision of medical care poses to the public.

5.      Among other things, as further detailed below, Fisch engaged in fraudulent conduct, caused Defendants to infringe Medrite Care's trademarks and committed numerous willful breaches of his fiduciary obligations by knowingly and willfully:

a.      misusing and diverting the contributions that Weiss made to Medrite Care, totaling $2,069,500, and loans to Medrite Care totaling $2,190,000;

b.      establishing the Defendant LLCs (the "Unauthorized Businesses") to service various unaffiliated medical practices (the "Unaffiliated Practices") and causing Defendants to use Medrite Care's trademarks, including the "Medrite Care" name, marks, symbols and other trade dress (the "Trade Dress")

c.      allowing Medrite Care to be invoiced, incur judgments and have its accounts levied for supplies shipped to and for the benefit of the Unauthorized Businesses and Unaffiliated Practices

d.      failing to perform Medrite Care's obligations under its exclusive Management Agreement with MMC, including, *inter alia*, the failure to pay MMC's tax

3

obligations and instead diverting to Defendants hundreds of thousands of dollars from an account designated for the payment of MMC's taxes;

e.     misrepresenting and/or failing to disclose material facts concerning Fisch's relationship with Medrite Care's former billing agent, defendant Supreme Medical Management LLC ("Supreme");

f.     diverting business from Medrite Care to Supreme;

g.     causing Medrite Care to make unauthorized payments to or for the benefit of Supreme, including for the payment of Supreme's employees, and

h.     causing Medrite Care to pay to Fisch excessive and unauthorized salary and/or other payments and benefits

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 because this action arises under 15 U.S.C. § 1121 *et seq*. (the "Lanham Act").

7.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a citizen of the State of New York or has sufficient minimum contact with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §139 because (i) a substantial part of the events or omissions giving rise to the claim occurred in this District, (ii) a substantial part of the property that is the subject of this action is situated in this District, and (iii) one or more of the defendants is subject to the Court's personal jurisdiction in this District.

## PARTIES

9.     Plaintiff Henry Weiss ("Plaintiff" or "Weiss") is an individual domiciled in the State of New York, Kings County, and a member of plaintiff entities Medrite Care, LLC, Medrite 72 LLC, Medrite BH LLC and Medrite Midtown West LLC.

4

10.     Plaintiff Medrite Care, LLC ("Medrite") is a limited liability company organized and existing under the laws of State of New York.

11.     Plaintiff Medrite 22nd LLC ("Medrite 22") is a limited liability company organized and existing under the laws of the State of New York.

12.     Plaintiff Medrite 72 LLC ("Medrite 72") is a limited liability company organized and existing under the laws of State of New York.

13.     Plaintiff Medrite BH LLC ("Medrite BH") is a limited liability company organized and existing under the laws of State of New York.

14.     Plaintiff Medrite Midtown West LLC ("Medrite Midtown West" and, together with MC, Medrite 22, Medrite 72, and Medrite BH, "Medrite Care" or the "Plaintiff Entities") is a limited liability company organized and existing under the laws of State of New York.

15.     Each of the plaintiff entities was formed for the purpose of carrying out the Medrite Care business and membership interests were allocated pursuant to the terms set forth in the Medrite Care operating agreement.

16.     On information and belief, defendant Medrite 243 LLC ("Medrite 243") is a limited liability company organized and existing under the laws of the State of New York and having a principal place of business in Miami Beach, Florida.

17.     On information and belief, defendant Medrite East Side LLC ("Medrite East Side") is a limited liability company organized and existing under the laws of the State of New York.

18.     On information and belief, defendant Medrite Haverstraw LLC ("Medrite Haverstraw") is a limited liability company organized and existing under the laws of the State of New York.

19.     On information and belief, defendant Medrite Holdings LLC ("Medrite Holdings") is a limited liability company organized and existing under the laws of the State of New York.

20.     On information and belief, defendant Medrite LLC ("Medrite") is a limited liability company organized and existing under the laws of the State of New York.

21.     On information and belief, defendant Medrite Management LLC "(Medrite Management") is a limited liability company organized and existing under the laws of the State of New York.

22.     On information and belief, defendant Medrite MtVernon LLC ("Medrite MtVernon") is a limited liability company organized and existing under the laws of the State of New York.

23.     On information and belief, defendant Medrite Myrtle LLC ("Medrite Myrtle") is a limited liability company organized and existing under the laws of the State of New York.

24.     On information and belief, defendant Medrite NYC LLC (Medrite NYC") is a limited liability company organized and existing under the laws of the State of New York.

25.     On information and belief, defendant Medrite Spring Valley LLC (Medrite Spring Valley") is a limited liability company organized and existing under the laws of the State of New York.

26.     On information and belief, defendant New Medrite Care NewYork International LLC ("New Medrite") is a limited liability company organized and existing under the laws of the State of New York.

27.     On information and belief, defendant Medrite 41 LLC ("Medrite 41" and, together with Medrite 243, Medrite East Side, Medrite Haverstraw, Medrite Holdings, Medrite,

Medrite Management, Medrite MtVernon, Medrite Myrtle, Medrite NYC, Medrite Spring Valley, and New Medrite, the "Defendant LLCs") is a limited liability company organized and existing under the laws of the State of Florida.

28.    On information and belief, defendant Medrite Medical Care PA ("Medrite Medical") is a professional association organized and existing under the laws of the State of Florida.

29.    On information and belief, Supreme Medical Management, LLC ("Supreme") is a limited liability company organized and existing under the laws of the Sate of New York.

30.    On information and belief, Samuel Fishman a/k/a Samuel Fisch ("Fisch") is an individual domiciled in the State of New York, Rockland County. Fisch is a member of each of the Defendant LLCs and holds himself out as the managing member or manager for each entity.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### The Plaintiff Entities

31.    Plaintiff MC was formed pursuant to an Operating Agreement dated October 27, 2010 for the purpose of providing management and administrative services in connection with the operation of an urgent care medical office to be called "Medrite" or "Medrite Care."

32.    Plaintiffs Medrite BH, Medrite 22, Medrite 72 and Medrite Midtown West were subsequently formed to service the Medrite Care business, as well.

33.    As set forth in the Operating Agreement, all cash equity was provided by Weiss as the investing member (the "Investing Member").  Fisch received his interests because he was designated as the working/managing member (the "Working Member").

34.    As the Investing Member in Medrite Care, Weiss made an initial capital contribution of $500,000 in exchange for a 60% Class A and B membership interest in Medrite Care.

35.     As the Working Member in and Manager of Medrite Care, Fisch made an initial capital contribution of $1 and received a 40% Class B Membership interest in Medrite Care.

36.     Medrite Care was organized for the purpose of providing management and administrative services in connection with the operation of an urgent care medical office to be called "Medrite" or "Medrite Care."

37.     Medrite Care is not a medical practice and cannot actually operate an urgent care medical office.  Medrite Care instead, is in the business of managing and providing back office support (*i.e.*, bookkeeping, purchasing, billing, account payables, banking, human resources) to a licensed medical practice, Medrite Medical Care, P.C. ("MMC"), a Professional Corporation owned by Dr. Jeffrey M. Dick ("Dr. Dick").  Therefore, Medrite Care's primary asset is the exclusive right it has to manage the Medrite Care branded urgent care centers for MMC,

38.     Initially, Medrite Care managed MMC's urgent care center located at 919 2nd Avenue, New York, New York (the "Original Medrite Facility" or "Midtown East Office").  As the business grew, Medrite Care, using Weiss' money, opened two additional locations for MMC: (i) 330 West 42nd Street, New York, New York (the "Midtown West Office") and (ii) 380 2nd Avenue, New York, New York (the "Second Avenue Office" and, together with the Midtown East Office and Midtown West Office, the "Original Medrite Facilities").  ON information and belief, Plaintiffs Medrite 22 and Medrite Midtown West were formed to help directly manage the new locations.

39.     Beginning in or about 2018, as a result of certain operating difficulties, Fisch recommended that Weiss form Medrite BH and Medrite 72 and to separate certain purchasing and billing services that Medrite Care had been providing to MMC.  Unbeknownst to Plaintiffs, the operating difficulties necessitating new LLCs was a direct result of Fisch's unlawful, tortious

and fraudulent conduct described below, which also contributed to the closure of 380 Medrite in or around 2018.

**The Management Agreement**

40.     Medrite Care was formed in order to manage the Original Medrite Facilities. The urgent care center, Medrite Medical Care, P.C. ("MMC") is a Professional Corporation owned by Dr. Jeffrey M. Dick ("Dr. Dick").

41.     In or around November 2010, Medrite Care entered into an Exclusive Management Services Agreement (the "Management Agreement") with MMC.

42.     Pursuant to the Management Agreement, MMC engaged Medrite Care as its exclusive provider of administrative and management services as may be required by MMC from time to time in the conduct of its urgent care medical practice in New York County.

43.     The services that Medrite Care agreed to provide to MMC include, but are not limited to:

(i)     the provision and maintenance of one or more offices for MMC, medical equipment, office equipment, fixtures, furniture and leasehold improvements;

(ii)    responsibility to manage, conduct and administer the day-to-day administrative, non-professional operations of MMC's urgent care medical practice;

(iii)   general business and bookkeeping services as reasonably required by MMC in connection with the conduct of its urgent care medical practice, including without limitation, accounting, budgeting, accounts receivable and accounts payable processing, electronic data processing and such other similar services as MMC may from time to time reasonably require;

(iv)    maintain electronic information systems that will facilitate patient scheduling, maintenance of electronic medical records and billing collection efforts;

(v)     payment of all wages and benefits for MMC's employees, all insurance premiums and all lease and/or loan payments for any of MMC's equipment

(vi)    provision of such non-professional personnel such as receptionist and secretarial personnel as is mutually agreed upon by MMC and Medrite Care from time to time – such personnel to remain employees of Medrite Care, which would be

responsible for all salaries, fringe benefits, taxes and insurance necessary with respect to the employees;

(vii)     provision of appointment scheduling services;

(viii)    recommend billing policies and procedures for all professional and related fees for medical and other professional services provided by MMC and, as MMC's designated billing agent, provide all billing services required by MMC in accordance with the policies and procedures adopted by MMC;

(ix)     recommend collection policies for the collection of fees for the medical and other professional services provided by MMC and provide all collection services required by MMC in accordance with the policies and procedures adopted by MMC;

(x)      develop and implement marketing and public relations materials with respect to the services provided by MMC;

(xi)     negotiate vendor contracts and assist with the evaluation of alternate proposals and bids;

(xii)    recruitment of professional personnel to be hired, trained, managed, supervised, compensated and terminated by MMC.

44.     In order to facilitate Medrite Care's performance of collection services for MMC, MMC appointed Medrite Care as its collection agent and directed Medrite Care to deposit all fees and other revenue collected on account of the medical and other professional services provided by MMC at the Original Facility in one or more bank accounts in the name of, and for the benefit of, MMC (the "MMC Accounts").

45.     Pursuant to the terms of the Management Agreement and as mandated by New York State law, the MMC Accounts were owned by MMC and controlled by Dr. Dick, and the funds, which were payment for medical services, had to be used exclusively for the business of MMC.

46.     As the Working Member of Medrite Care, Fisch obtained signatory authority on the MMC Accounts and was authorized and obligated to collect accounts receivable and payments for professional fees and to deposit such receivables and fees in the MMC Accounts.

47.     Additionally, Medrite Care maintained its own bank accounts in its own name and/or the names of the Plaintiff Entities to facilitate the non-medical business operations of Medrite Care.

48.     Specifically, Medrite Care maintained separate accounts for (i) the regular business operations of MMC, such as rent payments, purchase of medical supplies and non-medical payroll (the "Operations Accounts"), and (ii) the payment of MMC's tax obligations (the "Tax Accounts" and, together with the Operations Accounts, the "Medrite Care Accounts").

49.     In exchange for its provision of services to MMC under the Management Agreement, Medrite Care was entitled to receive certain Monthly Fees as set forth in Schedule C to the Management Agreement.

50.     Initially, Medrite Care provided a single office for MMC, the Midtown East Office.

**Weiss' Additional Capital Contributions Diluted Fisch's Ownership To Zero**

51.     At Fisch's request, from 2011 to 2017, in addition to his Initial Capital Contribution, Weiss made further capital contributions to Medrite Care in the cumulative amount of $1,569,500 (the "Additional Capital Contributions" and, together with the initial capital contribution, the "Contributions").

52.     Also at Fisch's request, from 2014 to 2015, Weiss made loans to Medrite Care in the cumulative amount of $2,190,000 (the "Loans").

53.     Weiss made the Additional Capital Contributions and Loans because Fisch represented to Weiss that the funds were necessary for the continued day-to-day operations of Medrite Care and its continued expansion of the "Medrite" brand.

54.     Specifically, Fisch claimed he needed money to expand Medrite Care beyond the Original Medrite Facility located in the Midtown East Office and establish Midtown West Office

and Second Avenue Office, as well as a fourth location in New City, New York that never opened (because the money was used by Fisch for his own personal gain).

55.    Pursuant to the Operating Agreement, "if an additional capital call is made, the Members agree to contribute additional capital in the same percentage as their respective share in the Company at the time the call is made.  If a Member fails to make an additional capital contribution in the same percentage as their existing share in the Company, the remaining Members may elect to i) dissolve the Company or ii) contribute the other member's percentage share and receive a corresponding increase in the contributing members [sic] equity in the Company."

56.    Because Fisch did not make corresponding Additional Capital Contributions based on his percentage share in Medrite Care, the effect of the Additional Capital Contributions made by Weiss was to divest Fisch of any ownership interest in Medrite Care and to transfer Fisch's 40% interest to Weiss, such that Weiss became the sole owner of Medrite Care.

57.    Indeed, when Fisch requested the initial additional capital at a meeting on or about April 2011, Weiss raised the issue of his dilution and he admitted he could not afford to contribute his share of the funds and that he understood his shares were diluted.  Each time Weiss made an additional contribution he had the same conversation and Fisch admitted he no longer had any interest in Plaintiffs and would remain employed as manager on behalf of Medrite Care.  Unfortunately, as discussed below, Fisch's assurances were false.

### Fisch Continues to Act as a Member of Medrite Care

58.    Rather, despite Fisch's acknowledgment (and the plain language of the Operating Agreement) that he no longer has any ownership interest in Medrite Care, Fisch, to date, continues to assert unauthorized authority and control over Medrite Care and its assets and resources as if he remained the Working Member of Medrite Care.

**Fisch's Fraudulent, Tortious and Illegal Scheme**

59.     Simply put, since 2010, Weiss made a total of $2,069,500 in direct contributions and a total of $2,190,000 in Loans to Medrite Care.  )

60.     Pursuant to the Operating Agreement, as Manager of Medrite Care, Fisch was obligated to make distributions to the Members as follows:

(i)     an initial distribution from cash flow of a Preferred Return to Weiss, as the sole Class A Member in Medrite Care, equal to 15% of Weiss's initial capital contribution, *i.e.*, $75,000 ($500,000 x 15%); and

(ii)    subsequent distributions from cash flow in accordance with the Membership Interests.

61.     Yet, despite operating three busy and profitable urgent care centers, Fisch has not caused Medrite Care to make required distributions nor to repay the Loans.  Fisch never made required distributions from Medrite Care's cash flow to Weiss, whether for his Preferred Return or any subsequent distributions that Weiss is entitled to receive as a Member of Medrite care.  Apparently, unbeknownst to Weiss, Fisch was instead using Medrite Care's profits to pay himself exorbitant "salaries" and fund unauthorized businesses.

62.     Whenever Weiss inquired why Fisch did not distribute money to him or repay the Loans, Fisch would pay Weiss nominal sums that cumulatively represent a tiny fraction of the distributions and repayments that Weiss should have received for his Contributions and Loans and Fisch repeatedly assured Weiss that the Companies were not profitable.  This statement was false.  In reality, Fisch used the Companies as his own personal piggybank to enrich himself and fund a steadily growing surreptitious empire of "Medrite" and "Medrite Care" branded urgent care centers built with Weiss' money and Dr. Dick's license, all without their knowledge.

13

**First, Fisch Simply Stole Money from Medrite Care**

63.     Pursuant to the Operating Agreement, Fisch was to be paid an annual $50,000 "Consulting Fee" in consideration for the performance of his duties as the Working Member of Medrite Care.

64.     Instead, Fisch acting as manager of Medrite Care has routinely caused the company to make payments to himself estimated to exceed $2,000,000 – far in excess of the allowed $50,000 annual Consulting Fee.

65.     Fisch accomplished his scheme through a variety of simple low class thefts including: (a) illegally diverting payments to his personal accounts; (b) paying personal expenses like cars, groceries and other bills with the Companies' money; (c) providing himself insurance and other benefits without authority; and (d) simply paying himself an astronomical salary.

**Fisch Diverted Plaintiffs' Assets to Unrelated, Unauthorized and Illegal Businesses**

66.     To add insult to injury, although he received a six-figure salary (plus benefits), Fisch ignored the Original Medrite Facilities and focused his attention on numerous unrelated (and illegal) businesses all built on Weiss' back.

67.     Specifically, Fisch diverted a substantial portion of the Contributions and Loans to establish unauthorized competing businesses (the "Unauthorized Businesses") to operate an unrelated medical billing company and various unauthorized "Medrite" branded management companies to service urgent care medical practices with offices in the States of New York and Florida (the "Unaffiliated Practices") illegally using Dr. Dick's license and the Medrite Care name, symbols, logos and other proprietary trade dress (the "Medrite Care Trade Dress").

68.     Worse, and far more troublesome than the outright theft of millions of dollars in contributions, loans, profits, materials and other assets (as detailed below), Fisch opened the

14

Unauthorized Businesses to manage urgent care practices that Fisch operates unlawfully, purportedly using Dr. Dick and MMC's license and insurance provider numbers.

69. Specifically, Fisch caused the Medrite Care website to advertise the following unauthorized urgent care medical practice locations (collectively, the "Unauthorized Facilities"):

    a. 177 Dyckman Street (the "Upper Manhattan Facility")

    b. 175 East Route 59, Spring Valley, New York 10977 (the "Rockland County Facility")

    c. 542 West 41st Street, Miami Beach Florida 33140 (the "Miami Beach Facility")

    d. 504 Myrtle Avenue, Brooklyn, New York 11205 (the "Brooklyn Facility")

    e. 243 4th Avenue, Brooklyn, New York 11215 (the "Park Slope Facility")

    f. 1646 Second Avenue, New York, New York 10028 (the "Upper East Side Facility")

70. Two other Unauthorized Facilities – located at 178-11 Union Turnpike, Fresh Meadows, New York (the "Fresh Meadows Facility") and 393 Mulberry Street, Newark, New Jersey (the "Newark Facility") – while not listed on the Medrite Care website, also use the Medrite Care name and marks without authority.

71. Dr. Dick did not authorize these Unauthorized Business and Unauthorized Facilities to operate using his and MMC's licenses and provider numbers.

72. Therefore, Defendants' actions, aside from being tortious, unlawful, fraudulent and blatant breach of trademark and trade dress, are extremely dangerous, as they are a violation of New York State law intended for the protection of patients. Defendants' continued management of the Unauthorized Businesses threatens tremendous harm to Medrite Care, MMC and the continued legal operation of the authorized Medrite Care branded urgent cares. Indeed,

Defendants' actions are a direct breach of the Management Agreement and, although unauthorized, severely threaten the valuable relationship that Plaintiffs have with MMC.

73. Fisch formed the Defendant LLCs for the operations and management of the Unauthorized Businesses and diverted funds from the Medrite Care Accounts to accounts held in his own name and/or the names of the various Defendants (the "Unauthorized Accounts").

74. Fisch also secretly began using one or more of the MMC Accounts and the Medrite Care Accounts for the Unauthorized Businesses, despite knowing that Medrite Care had the exclusive right under the Management Agreement to service MMC.

75. Among other things, Fisch diverted Medrite Care's resources, including, but not limited to, Medrite Care's cash, equipment, supplies, vendor agreements and goodwill for his own benefit and the benefit of the Unauthorized Businesses and Unaffiliated Practices.

76. For example:

    a. Fisch caused Medrite Care to pay the payroll expenses of the Unauthorized Businesses.

    b. Fisch caused Medrite Care to be invoiced and to pay for supplies that were shipped to and for the benefit of the Unauthorized Businesses.

    c. Fisch caused Medrite Care to be invoiced and to pay for the marketing and advertising expenses of the Unauthorized Businesses, including, *inter alia*, the expenses of brochures, digital and print media advertising, social media advertising and website expenses.

    d. Fisch caused Medrite Care to make unauthorized payments to Fisch and/or for Fisch's benefit personally, far in excess of the $50,000 Consulting Fee he was entitled to under the Operating Agreement and despite the fact that the majority of Fisch's time was devoted to the Unauthorized Businesses at the expense of and to the neglect of Medrite Care.

    e. Fisch, without the knowledge and authority of Dr. Dick, illegally allowed the MMC Accounts to be used for the billing operations of the Unauthorized Businesses and the Unaffiliated Practices.

    f. Fisch advertised the Unaffiliated Practices through the Medrite Care website and in Medrite Care marketing materials and advertisements,

causing business to be diverted from Medrite Care to the Unauthorized Businesses.

g.  Fisch diverted numerous business opportunities from Medrite Care to Defendants by advertising and marketing the Unauthorized Businesses and Unaffiliated Practices to the general public using the Medrite Care name and other Trade Dress and misleading the public into thinking that they are one and the same as Medrite Care.

77.    Fisch also engaged in extensive self-dealing.  In addition to the aforementioned excessive payments that Fisch took from Medrite Care, Fisch caused Medrite Care to use his own billing company, defendant Supreme, for Medrite Care's billing operations.

78.    Prior to 2017, Medrite Care used an unrelated, third-party company for MedRite Care's billing operations and paid an industry standard fee of approximately 5% for its services. In or around 2019, Fisch represented to Weiss and to Medrite Care that he would cause Medrite Care to acquire a 50% stake in Supreme and that he would begin using Supreme for Medrite Care's billing operations, which would allow Medrite Care to save the 5% service fee for its billing while making substantial profits providing billing services to third parties.

79.    Although the purchase of Supreme would increase Medrite Care's payroll and operating expenses, Fisch represented that the cost to acquire Supreme and to pay its expenses would be offset by the lower fees charged to Medrite Care and the receipt of fees from Supreme's pre-existing and new clients.

80.    Based on these representations, Weiss and Medrite Care agreed to use Supreme as Medrite Care's billing agent and to pay for Supreme's overhead expenses, including office space and payroll expenses.

81.    However, Medrite Care never acquired a 50% stake in Supreme despite using it for billing and paying all of its overhead and payroll because, on information and belief, Fisch personally acquired a 50% stake in Supreme and partnered with its other 50% owner, Moshe

17

Mann ("Mann").  Fisch also caused Medrite Care to hire Mann as the Medrite Care controller and to pay Mann an annual salary of $75,000 to do nothing other than operate Supreme, an unrelated business charging Medrite Care exorbitant fees.

82.    Incredibly, although owned by Fisch personally, Fisch paid Supreme's payroll and office expenses out of Medrite Care's operating account.

83.    Further, Fisch never paid Weiss any portion of the promised fees from Supreme's servicing of pre-existing and new clients.  As a result, Medrite Care's net expense for the acquisition and retention of Supreme as its billing agent far exceeded the 5% fee that Medrite Care had paid to its prior billing agent.

84.    Accordingly, in or around 2019, Weiss demanded that Fisch divest any interest that Medrite Care and/or Fisch personally had acquired in Supreme.  In response, Fisch admitted to his fraudulent and tortious behavior and promised to immediately remove Supreme from Medrite Care's office and payroll and divest his ownership from Supreme.

85.    However, on information and belief, despite Fisch's agreement and promise to do so, Fisch retained his ownership interest in Supreme, continues to maintain signatory authority on Supreme's accounts and continues to conduct business on behalf of Supreme, including servicing Supreme's pre-existing and new third-party clients.

86.    Fisch also continues to cause Medrite Care to pay for Supreme's overhead expenses, including the payment of salaries to Supreme's employees.  For example, as recently as February 28, 2020, Fisch caused Medrite Care to make a payment to Supreme in the amount of $16,338.46 classified as a payroll expense, despite the fact that Supreme is no longer the authorized billing agent for Medrite Care and never should have been on Medrite Care's payroll.

87.    Fisch also caused Medrite Care to continue making payments to Mann.

**Not Content with Breaching his Agreements, Defrauding Weiss, and Tortiously Damaging Weiss and the Companies, Fisch Engages in Further Shocking Unlawful Conduct**

88.     To add insult to injury, Fisch unlawfully commingled the Medrite Care Accounts and the MMC Accounts with the Unauthorized Accounts and has failed to maintain corporate formalities by keeping separate books and records for Medrite Care, MMC and the Unauthorized Businesses and Unaffiliated Practices.

89.     Fisch also caused judgments to be entered against Medrite Care for failure to pay invoices for supplies provided to and for the benefit of the Unauthorized Businesses and Unaffiliated Practices, resulting in the levying of a Medrite Care account at Chase Bank (the "Chase Account").

90.     Additionally, Medrite Care maintains an MMC Account ending in *8850 at Chase Bank, held in the name of Medrite 72 (the "Medrite 72 Tax Account") for the purpose of paying the tax obligations of MMC, as required pursuant to the Management Agreement.

91.     As the Working Member and now manager, Fisch owed and continues to owe a duty to Medrite Care to ensure that Medrite Care causes the tax obligations of MMC to be paid from the Medrite 72 Tax Account.  Fisch caused approximately $500,000 to be transferred from the MMC Accounts to the Medrite 72 Tax Account, ostensibly for the payment of MMC's tax obligations.

92.     However, despite his repeated promises to do so, Fisch has refused to authorize and cause the payment of MMC's outstanding tax obligations to be paid from the Medrite 72 Tax Account.

93.     Instead, Fisch has looted the Medrite 72 Tax Account by illegally diverting hundreds of thousands of dollars from the Medrite 72 Tax Account for his own and Defendants' benefit.

94.     Fisch has also caused Defendants to infringe Medrite Care's trademarks, including the "Medrite Care" name, marks, symbols and other trade dress (the "Trade Dress").

95.     Such Trade Dress includes the following distinctive names and phrases that have become synonymous with Medrite Care's business: "Medrite," "Medrite Care," "Medrite Urgent Care" and "Medrite Walk-in Urgent Care."

96.     Medrite Care's proprietary trade dress also includes the following marks, which appear on the Medrite Care website and in its marketing materials, all developed and paid for by Medrite Care, including brochures and in digital and print media advertising the Medrite Care business:





97.     Medrite Care has spent substantial time, money, and effort in developing consumer recognition and awareness of its Trade Dress. Through the extensive use of the Medrite Care Trade Dress, Medrite Care has built up and developed significant goodwill in connection with the services that it provides.

98.     The Medrite Care name is distinct and has become associated with Medrite Care's business and the goodwill that Medrite Care has developed; it is used to distinguish Medrite Care's business and the services it provides from the businesses and services of others.  Indeed, Medrite Care's website is the first result on Google when performing a search for "Medrite." Even more critical, Medrite Care's website is on the first page of Google's search results (a vital

and highly valuable business asset[1]) when searching "urgent care New York," "urgent care Midtown" and other generic and related search strings.

99.     Medrite Care has also developed and uses various service marks, symbols and other trade dress to identify and distinguish its business and services from those of others.  Such marks, symbols and other trade dress are used in the marketing of Medrite Care's business and services through, *inter alia*, Medrite Care's website, digital and print media advertising and brochures.

100.    Fisch used Medrite Care's Trade Dress for the benefit of the Unauthorized Businesses and Unaffiliated Practices.

101.    For example, Fisch caused several of the Unaffiliated Practices to be advertised through the Medrite Care website, which was created and developed exclusively for the benefit of Medrite Care and at Medrite Care's expense.

102.    Fisch also caused the Unauthorized Businesses and Unaffiliated Practices to market their services through digital and print media using the Medrite Care name and other Trade Dress and caused Medrite Care to be invoiced and to pay for such marketing.

103.    For example, five of the Unauthorized Facilities are advertised alongside the Original Medrite Facilities through Solv, a web-based marketing service for urgent care facilities.

---

[1] *See, e.g.,* *https://support.google.com/google-ads/answer/2472742?hl=en* ("On average, ads that appear on the first page or above the search results get substantially more clicks than ads that appear on other search results pages"); https://neilpatel.com/blog/first-page-google/ ("There's a joke that asks, "Where should you bury something that you don't want people to find?" Answer: On the second page of Google."); https://ahrefs.com/blog/how-to-get-on-the-first-page-of-google/ ("only **0.78%** of people click results on the second page of Google…**If you rank on page two or beyond, you're practically invisible**.")

104.    The Unauthorized Facilities are displayed on the Solv website underneath the Medrite Care name and marks, together with the following statement: "Founded in 2010, in New York, Medrite Walk-in Urgent Care currently has 4 locations in the NYC metro area, including in Brooklyn and Jamaica, as well as a location in Miami Beach, Fl.  Providing same day, walk-in healthcare for patients with non-emergent injuries and illnesses, Medrite provides personalized care that works with your schedule."

105.    Each Unauthorized Facility is described on the Solv website as "part of the larger Medrite Walk-in Urgent Care" and includes a graphic depicting the Medrite mark alongside the description.  Additionally, photos of the Brooklyn Facility and the Miami Beach Facility show the Medrite Care name and marks prominently displayed on the storefront and reception area walls.

106.    Thus, it is plainly evident that Defendants' unauthorized use of the Medrite Care name and other Trade Dress has already caused significant confusion and has made it impossible for potential customers and third-party vendors to distinguish between the Original Medrite Facilities and the Unauthorized Facilities..

107.    Weiss was never asked to nor gave his consent for Defendants to use the Medrite Care name or other Trade Dress for any purpose.

**BEIS DIN**

108.    Plaintiffs are religiously bound to bring their dispute in the first instance to a Beis Din – a Jewish court of law – and will serve Defendants with a hazmanah – the Beis Din equivalent of a summons – commanding Defendants' appearance before the Beth Din.  Plaintiffs intend to pursue their claims in this Court until such time as Defendants comply with the hazmanah and submit to the jurisdiction of the Beth Din for the resolution of the parties' dispute.

22

## DEMAND FUTILITY

109.    Plaintiff brings this action in his individual capacity and derivatively on behalf of Medrite Care, to redress injuries suffered, and to be suffered, by Weiss and Medrite Care as a direct result of Defendants' actions.

110.    Weiss is a member of Medrite Care, was a member of Medrite Care at the time of the wrongdoing alleged herein and has been a member of Medrite Care continuously since that time.

111.    Weiss will adequately and fairly represent the interests of Medrite Care and its members in enforcing and prosecuting its rights.

112.    As detailed below, Plaintiffs seek declaratory judgment recognizing that, pursuant to the Medrite Care Operating Agreement, Weiss is now the sole member of Medrite Care and each of its constituent Plaintiff Entities.

113.    As the sole member of Medrite Care, Weiss has authorized the Plaintiff Entities to commence this action directly.

114.    Alternatively, should the Court determine that Weiss is not the sole member of Medrite Care, the Plaintiff Entities comprising Medrite Care are named in this case solely in a derivative capacity.

115.    As a result of the facts set forth herein, Plaintiff has not made any demand on Fisch as Working Member to institute this action because (i) by virtue of the facts set forth herein, Fisch is no longer a member of Medrite Care, and (ii) even if Fisch would be a member of Medrite Care, demand would be a futile and useless act given Fisch's role in orchestrating and directing the wrongdoing complained of herein, thereby rendering Fisch incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

116.    The wrongful acts complained of herein show that Fisch willfully, fraudulently and in bad faith committed numerous breaches of his fiduciary duties of good faith, loyalty, due care and oversight.

117.    Weiss is therefore incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth above and below.

### FIRST CAUSE OF ACTION
**(False Designation of Origin, False and Misleading Advertising, 15 U.S.C. § 1125[a]
Against All Defendants – Derivative Claim)**

118.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

119.    Defendants' acts as described herein are a violation of 15 U.S.C § 1125(a)(1)(A), as they constitute a blatant use in commerce of the Medrite Care Trade Dress in a manner that has and is likely to continue to cause confusion and mistake and to deceive the public as to the association, connection, affiliation and origin of the Unauthorized Businesses, Unaffiliated Practices and the business and service they provide, with Medrite Care.

120.    Defendants' acts as described herein are a violation of 15 U.S.C § 1125(a)(1)(B), as they constitute a blatant use of the Medrite Trade Dress in commercial advertising and promotion in a manner that misrepresents the nature, characteristics and quality of Defendants' services and commercial activities.

121.    Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

122.    At all relevant times, Defendants acted willfully in using Medrite Care's Trade Dress, and knew that Defendants were not authorized to use Plaintiffs' Trade Dress in marketing and/or advertising any business or services other than Plaintiffs' business and services.  Plaintiffs

are therefore entitled to recover Defendants' profits obtained from their unauthorized use of the Medrite Care Trade Dress, in addition to Plaintiffs' damages and the costs of this action.

123.    Defendants' direct and/or contributory acts in violation of section 1125 have caused and will continue to cause monetary damages, as well as reputational damages and other irreparable harm to Medrite Care as a result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

**SECOND CAUSE OF ACTION**
**(False Designation of Origin, False and Misleading Advertising, 15 U.S.C. § 1125[a]**
**Against All Defendants – Individual and Direct Claim)**

124.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

125.    Defendants' acts as described herein are a violation of 15 U.S.C § 1125(a)(1)(A), as they constitute a blatant use in commerce of the Medrite Care Trade Dress in a manner that has and is likely to continue to cause confusion and mistake and to deceive the public as to the association, connection, affiliation and origin of the Unauthorized Businesses, Unaffiliated Practices and the business and service they provide, with Medrite Care.

126.    Defendants' acts as described herein are a violation of 15 U.S.C § 1125(a)(1)(B), as they constitute a blatant use of the Medrite Trade Dress in commercial advertising and promotion in a manner that misrepresents the nature, characteristics and quality of Defendants' services and commercial activities.

127.    Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

128.    At all relevant times, Defendants acted willfully in using Medrite Care's Trade Dress, and knew that Defendants were not authorized to use Plaintiffs' Trade Dress in marketing

and/or advertising any business or services other than Plaintiffs' business and services.  Plaintiffs are therefore entitled to recover Defendants' profits obtained from their unauthorized use of the Medrite Care Trade Dress, in addition to Plaintiffs' damages and the costs of this action.

129.    Defendants' direct and/or contributory acts in violation of section 1125 have caused and will continue to cause monetary damages, as well as reputational damages and other irreparable harm to Weiss and Medrite Care as a result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress

### THIRD CAUSE OF ACTION
**(Violation of Common Law Trademark Infringement and Unfair Competition Against All Defendants – Derivative Claim)**

130.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

131.    Defendants' acts as described herein constitute trademark infringement and unfair competition under the common law of the State of New York.

132.    Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

133.    At all relevant times, Defendants' acted willfully and in bad faith in their use of the Medrite Care Trade Dress in a manner that has and is likely to continue to cause confusion and mistake and to deceive the public as to the association, connection, affiliation and origin of Defendants and the business and service they provide, with Medrite Care.

134.    At all relevant times, Defendants' acted willfully and in bad faith in their use of the Medrite Care Trade Dress in commercial advertising and promotion in a manner that misrepresents the nature, characteristics and quality of Defendants' services and commercial

activities. Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

135.    At all relevant times, Defendants acted willfully in using Medrite Care's Trade Dress, and knew that Defendants were not authorized to use Plaintiffs' Trade Dress in marketing and/or advertising any business or services other than Plaintiffs' business and services.  Plaintiffs are therefore entitled to recover Defendants' profits obtained from their unauthorized use of the Medrite Care Trade Dress, in addition to Plaintiffs' damages and the costs of this action.

136.    Medrite Care has incurred, and continues to incur, monetary damages, as well as reputational damages and other irreparable harm as a result of Defendants' acts as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

**FOURTH CAUSE OF ACTION**
**(Violation of Common Law Trademark Infringement and Unfair Competition Against All Defendants – Individual and Direct Claim)**

137.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

138.    Defendants' acts as described herein constitute trademark infringement and unfair competition under the common law of the State of New York.

139.    Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

140.    At all relevant times, Defendants' acted willfully and in bad faith in their use of the Medrite Care Trade Dress in a manner that has and is likely to continue to cause confusion and mistake and to deceive the public as to the association, connection, affiliation and origin of Defendants and the business and service they provide, with Medrite Care.

141. At all relevant times, Defendants' acted willfully and in bad faith in their use of the Medrite Care Trade Dress in commercial advertising and promotion in a manner that misrepresents the nature, characteristics and quality of Defendants' services and commercial activities. Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

142. At all relevant times, Defendants acted willfully in using Medrite Care's Trade Dress, and knew that Defendants were not authorized to use Plaintiffs' Trade Dress in marketing and/or advertising any business or services other than Plaintiffs' business and services. Plaintiffs are therefore entitled to recover Defendants' profits obtained from their unauthorized use of the Medrite Care Trade Dress, in addition to Plaintiffs' damages and the costs of this action.

143. Weiss and Medrite Care have directly incurred, and continue to incur, monetary damages, as well as reputational damages and other irreparable harm as a result of Defendants' acts as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

**FIFTH CAUSE OF ACTION**
**(Violation of N.Y. Gen. Bus. Law § 360-l Against All Defendants – Derivative Claim)**

144. Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

145. Defendants' acts as described herein have injured and are likely to continue to cause injury Medrite Care's business reputation and to dilute the distinctive quality of the Medrite Care name and other Trade Dress.

146. Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

147.    At all relevant times, Defendants' acted willfully and knowingly in their commission of the deceptive acts and practices as described herein, and with intent to commit a fraud on the public, in direct violation of N.Y. Gen Bus. Law § 360-l.

148.    Plaintiff has incurred, and continues to incur, monetary and reputational damages as a result of Defendants' deceptive acts and practices as described herein.

149.    Defendants' direct and/or contributory acts in violation of section 360-l have caused and will continue to cause monetary damages, as well as reputational damages and other irreparable harm as a result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

## SIXTH CAUSE OF ACTION
### (Violation of N.Y. Gen. Bus. Law § 360-l Against All Defendants – Individual and Direct Claim)

150.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

151.    Defendants' acts as described herein have injured and are likely to continue to cause injury Medrite Care's business reputation and to dilute the distinctive quality of the Medrite Care name and other Trade Dress.

152.    Defendants have unlawfully profited in an amount to be proven at trial as a result of the acts described herein.

153.    At all relevant times, Defendants' acted willfully and knowingly in their commission of the deceptive acts and practices as described herein, and with intent to commit a fraud on the public, in direct violation of N.Y. Gen Bus. Law § 360-l.

154.    Plaintiff has incurred, and continues to incur, monetary and reputational damages as a result of Defendants' deceptive acts and practices as described herein.

29

155.     Defendants' direct and/or contributory acts in violation of section 360-l have caused and will continue to cause monetary damages, as well as reputational damages and other irreparable harm directly to Weiss and Medrite Care as a result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

## SEVENTH CAUSE OF ACTION
### (Violation of N.Y. Gen. Bus. Law § 349 Against All Defendants – Derivative Claim)

156.     Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

157.     Defendants' acts as described herein constitute deceptive acts and practices in the conduct of Defendants' Unauthorized Businesses and Unaffiliated Practices, trade and commerce and the furnishing of services.

158.     Defendants' willful and knowing use of the Medrite name, symbols, service marks and other trade dress in the marketing and advertising of Defendants' Unauthorized Businesses and Unaffiliated Practices was and continues to be materially misleading to the consuming public, who are led to believe that the Unauthorized Businesses and Unaffiliated Practices are one and the same as Medrite Care.

159.     Medrite Care has been injured, and continues to incur injury, as a direct and proximate result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

## EIGHTH CAUSE OF ACTION
### (Violation of N.Y. Gen. Bus. Law § 349 Against All Defendants – Individual and Direct Claim)

160.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

161.    Defendants' acts as described herein constitute deceptive acts and practices in the conduct of Defendants' Unauthorized Businesses and Unaffiliated Practices, trade and commerce and the furnishing of services.

162.    Defendants' willful and knowing use of  the Medrite name, symbols, service marks and other trade dress in the marketing and advertising of Defendants' Unauthorized Businesses and Unaffiliated Practices was and continues to be materially misleading to the consuming public, who are led to believe that the Unauthorized Businesses and Unaffiliated Practices are one and the same as Medrite Care.

163.    Weiss and Medrite Care have been injured, and continue to incur injury, as a direct and proximate result of Defendants' deceptive acts and practices as described herein, including loss of business, harm to Medrite Care's business reputation and goodwill, and the dilution of Medrite Care's Trade Dress.

### NINTH CAUSE OF ACTION
**(Breach of Fiduciary Duty – Corporate Waste, Self-Dealing, Gross Mismanagement, and Diversion of Corporate Opportunity Against Fisch – Derivative Claim)**

164.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

165.    As Working Member of Medrite Care and by reason of his ability to control the business and corporate affairs of Medrite Care, Fisch owes fiduciary obligations of good faith, loyalty and candor to his co-member, Weiss and to Medrite Care, and was and is required to use his utmost ability to control and manage Medrite Care in a fair, just, honest and equitable manner.

166.    Fisch was and is required to act in furtherance of the best interests of Medrite Care's and Weiss's interests, for the benefit of Medrite Care and its members, and not in furtherance of Fisch's own personal interest and benefit.

167.    By his actions, Fisch abandoned and abdicated his responsibilities and fiduciary duties with regard to the prudent management of the assets and business of Medrite Care in a manner consistent with the standard operations of a closely held LLC.

168.    Fisch breached his fiduciary duties of care and loyalty by his egregious bad faith and self-dealing actions as described herein, including, among other things, the waste, misuse and diversion of Medrite Care's assets, including, inter alia, (i) the misuse and diversion of Weiss's Contributions, (ii) the establishment of the Defendant LLCs and Unauthorized Businesses and Unaffiliated Practices and their use of the Medrite Care name and other Trade Dress, (iii) allowing Medrite Care to be invoiced, incur judgments and have its accounts levied for supplies shipped to and for the benefit of the Unauthorized Businesses and Unaffiliated Practices, (iv) the failure to perform Medrite Care's obligations under its exclusive Management Agreement with MMC, including, *inter alia*, the failure to pay MMC's tax obligations on its behalf, (v) misrepresenting and/or failing to disclose material facts concerning Fisch's relationship with Supreme; (vi) diverting business from Medrite Care to Supreme; (vii) causing Medrite Care to make unauthorized payments to or for the benefit of Supreme, including for the payment of Supreme's employees,  and (viii) causing Medrite Care to pay to Fisch excessive and unauthorized salary and/or other payments and benefits.

169.    Medrite Care has incurred, and continues to incur, damages as a direct and proximate result of Fisch's gross mismanagement and breaches of his fiduciary duties, including,

inter alia, loss of business, damage to Medrite Care's reputation and goodwill and the theft of Medrite Care's assets and resources.

### TENTH CAUSE OF ACTION
**(Breach of Fiduciary Duty – Corporate Waste, Self-Dealing, Gross Mismanagement, and Diversion of Corporate Opportunity Against Fisch – Individual and Direct Claim)**

170.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

171.    As Working Member of Medrite Care and by reason of his ability to control the business and corporate affairs of Medrite Care, Fisch owes fiduciary obligations of good faith, loyalty and candor to his co-member, Weiss and to Medrite Care, and was and is required to use his utmost ability to control and manage Medrite Care in a fair, just, honest and equitable manner.  Fisch was and is required to act in furtherance of the best interests of Medrite Care's and Weiss's interests, for the benefit of Medrite Care and its members, and not in furtherance of Fisch's own personal interest or benefit.

172.    By his actions, Fisch abandoned and abdicated his responsibilities and fiduciary duties with regard to the prudent management of the assets and business of Medrite Care in a manner consistent with the standard operations of a closely held LLC.

173.    Fisch breached his fiduciary duties of care and loyalty by his egregious bad faith and self-dealing actions as described herein, including, among other things, the waste, misuse and diversion of Medrite Care's assets, including, inter alia, (i) the misuse and diversion of Weiss's Contributions, (ii) the establishment of the Defendant LLCs and Unauthorized Businesses and Unaffiliated Practices and their use of the Medrite Care name and other Trade Dress, (iii) allowing Medrite Care to be invoiced, incur judgments and have its accounts levied for supplies shipped to and for the benefit of the Unauthorized Businesses and Unaffiliated Practices, (iv) the failure to perform Medrite Care's obligations under its exclusive Management

33

Agreement with MMC, including, *inter alia*, the failure to pay MMC's tax obligations on its behalf, (v) misrepresenting and/or failing to disclose material facts concerning Fisch's relationship with Supreme; (vi) diverting business from Medrite Care to Supreme; (vii) causing Medrite Care to make unauthorized payments to or for the benefit of Supreme, including for the payment of Supreme's employees,  and (viii) causing Medrite Care to pay to Fisch excessive and unauthorized salary and/or other payments and benefits.

174.    Weiss and Medrite Care have incurred, and continue to incur, direct damages as a direct and proximate result of Fisch's gross mismanagement and breaches of his fiduciary duties including, *inter alia*, loss of business, damage to Medrite Care's reputation and goodwill and the theft of Medrite Care's assets and resources.

### ELEVENTH CAUSE OF ACTION
### (Accounting Against All Defendants – Derivative Claim)

175.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

176.    As Managing Member of Medrite Care and by reason of his ability to control the business and corporate affairs of Medrite Care, Fisch owes fiduciary obligations of good faith, loyalty and candor to his co-member, Weiss and to Medrite Care, and was and is required to use his utmost ability to control an manage Medrite Care in a fair, just, honest and equitable manner. Fisch was and is required to act in furtherance of the best interests of Medrite Care's and Weiss's interests, to benefit Medrite Care and its members and not in furtherance of Fisch's own personal interest or benefit.

177.    Prior to commencing this action, Fisch refused repeated demands for an accounting of Medrite Care and Defendants and access to their books and records.

34

178.    Medrite Care is entitled to an order directing Defendants to provide Medrite Care with (i) an accounting of all activities, assets, liabilities and accounts of Medrite Care and each defendant and its affiliates, including each Unauthorized Business and Unaffiliated Practice, and (ii) an opportunity to review all books and records of Medrite Care and all books and records of and/or related to each defendant and its affiliates.

### TWELFTH CAUSE OF ACTION
### (Accounting Against All Defendants – Individual and Direct Claim)

179.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraphs, as if fully set forth herein.

180.    As Managing Member of Medrite Care and by reason of his ability to control the business and corporate affairs of Medrite Care, Fisch owes fiduciary obligations of good faith, loyalty and candor to his co-member, Weiss and to Medrite Care, and was and is required to use his utmost ability to control an manage Medrite Care in a fair, just, honest and equitable manner. Fisch was and is required to act in furtherance of the best interests of Medrite Care's and Weiss's interests, to benefit Medrite Care and its members and not in furtherance of Fisch's own personal interest or benefit.

181.    Prior to commencing this action, Fisch refused repeated demands for an accounting of Medrite Care and Defendants and access to their books and records.

182.    Weiss and Medrite Care are entitled to an order directing Defendants to provide Weiss and Medrite Care with (i) an accounting of the Contributions and Loans, (ii) an accounting of all activities, assets, liabilities and accounts of Medrite Care and each defendant and its affiliates, including each Unauthorized Business and Unaffiliated Practice, and (iii) an opportunity to review all books and records of Medrite Care and all books and records of and/or related to each defendant and its affiliates.

35

## THIRTEENTH CAUSE OF ACTION
### (Breach of Operating Agreement Against Fisch – Derivative Claim)

183.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

184.    Pursuant to the Operating Agreement, Fisch was obligated to make certain distributions to Weiss as Investing Member, including a Preferred Return equal to 15% of Weiss's Initial Contribution and subsequent distributions in proportion to his ownership interest in Medrite Care.

185.    Fisch breached the Operating Agreement by failing to make the required Preferred Return to Weiss and any subsequent distributions.

186.    Pursuant to the Operating Agreement, Fisch was entitled to receive annual compensation totaling $50,000 in the form of a Consulting Fee.  Fisch breached the Operating Agreement by causing Medrite Care to pay him far in excess of the allowed annual Consulting Fee.

187.    Pursuant to the Operating Agreement, "if an additional capital call is made, the Members agree to contribute additional capital in the same percentage as their respective share in the Company at the time the call is made.  If a Member fails to make an additional capital contribution in the same percentage as their existing share in the Company, the remaining Members may elect to i) dissolve the Company or ii) contribute the other member's percentage share and receive a corresponding increase in the contributing members [sic] equity in the Company."

188.    Because Fisch did not make corresponding Additional Capital Contributions based on his percentage share in Medrite Care, and Weiss elected to contribute Fisch's percentage share, the effect of the Additional Capital Contributions made by Weiss was to divest

Fisch of any ownership interest in Medrite Care and to transfer Fisch's 40% interest to Weiss, such that Weiss became the sole owner of Medrite Care.

189.    Fisch breached the Operating Agreement by failing to tender his shares in Medrite Care to Weiss.

190.    Pursuant to the Operating Agreement, Fisch agreed that, in the conduct of Medrite Care's business, any business dealings and undertakings with Members and their affiliates shall be at arm's length and on commercially reasonable terms.

191.    In violation of the Operating Agreement, Fisch, directly and through his affiliates, including, *inter alia*, the Unauthorized Businesses and Unaffiliated Practices, engaged in business dealings and undertakings with Medrite Care that were not at arm's length and were not on commercially reasonable terms.

192.    Pursuant to the Operating Agreement, Fisch may not enter into, or bind Medrite Care, in any matter involving any expenditure, obligation, or indebtedness, either individually or in a series of related transactions, which exceeds $25,000, without first obtaining the written consent of the Investing Member.

193.    Fisch breached the Operating Agreement by causing Medrite Care to incur numerous expenditures, obligations, salaries and indebtedness, individually and through serial related transactions, in excess of $25,000, without the written consent of Weiss as Investing Member.

194.    Pursuant to the Operating Agreement, Fisch may not approve a merger or consolidation of Medrite Care into another LLC or other business entity.  Fisch breached the Operating Agreement by forming the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices and treating them as if they were one and the same as Medrite Care.

195.     Fisch also breached the Operating Agreement by failing to maintain complete and accurate books and records of Medrite Care and supporting documentation of the transactions with respect to Medrite Care's business.

196.     Fisch also breached the Operating Agreement by failing to "devote such time to the business and affairs as is necessary to carry out the duties as set forth in the Agreement."

197.     Fisch was also grossly negligent and acted in bad faith in the performance of his duties as Working Member of Medrite Care, in violation of his implied duty of good faith under the Operating Agreement.

198.     Medrite Care incurred, and continues to incur, damages, as a direct and proximate result of Fisch's breaches of the Operating Agreement, which were done intentionally and in bad faith.

### FOURTEENTH CAUSE OF ACTION
**(Breach of Operating Agreement Against Fisch – Individual and Direct Claim)**

199.     Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

200.     Pursuant to the Operating Agreement, Fisch was obligated to make certain distributions to Weiss as Investing Member, including a Preferred Return equal to 15% of Weiss's Initial Contribution and subsequent distributions in proportion to his ownership interest in Medrite Care.

201.     Fisch breached the Operating Agreement by failing to make the required Preferred Return to Weiss and any subsequent distributions.

202.     Pursuant to the Operating Agreement, Fisch was entitled to receive annual compensation totaling $50,000 in the form of a Consulting Fee. Fisch breached the Operating

Agreement by causing Medrite Care to pay him far in excess of the allowed annual Consulting Fee.

203.    Pursuant to the Operating Agreement, "if an additional capital call is made, the Members agree to contribute additional capital in the same percentage as their respective share in the Company at the time the call is made.  If a Member fails to make an additional capital contribution in the same percentage as their existing share in the Company, the remaining Members may elect to i) dissolve the Company or ii) contribute the other member's percentage share and receive a corresponding increase in the contributing members [sic] equity in the Company."

204.    Because Fisch did not make corresponding Additional Capital Contributions based on his percentage share in Medrite Care, and Weiss elected to contribute Fisch's percentage share, the effect of the Additional Capital Contributions made by Weiss was to divest Fisch of any ownership interest in Medrite Care and to transfer Fisch's 40% interest to Weiss, such that Weiss became the sole owner of Medrite Care.

205.    Fisch breached the Operating Agreement by failing to tender his shares in Medrite Care to Weiss.

206.    Pursuant to the Operating Agreement, Fisch agreed that, in the conduct of Medrite Care's business, any business dealings and undertakings with Members and their affiliates shall be at arm's length and on commercially reasonable terms.

207.    In violation of the Operating Agreement, Fisch, directly and through his affiliates, including, *inter alia*, the Unauthorized Businesses and Unaffiliated Practices, engaged in business dealings and undertakings with Medrite Care that were not at arm's length and were not on commercially reasonable terms.

208.    Pursuant to the Operating Agreement, Fisch may not enter into, or bind Medrite Care, in any matter involving any expenditure, obligation, or indebtedness, either individually or in a series of related transactions, which exceeds $25,000, without first obtaining the written consent of the Investing Member.

209.    Fisch breached the Operating Agreement by causing Medrite Care to incur numerous expenditures, obligations, salaries and indebtedness, individually and through serial related transactions, in excess of $25,000, without the written consent of Weiss as Investing Member.

210.    Pursuant to the Operating Agreement, Fisch may not approve a merger or consolidation of Medrite Care into another LLC or other business entity.  Fisch breached the Operating Agreement by forming the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices and treating them as if they were one and the same as Medrite Care.

211.    Fisch also breached the Operating Agreement by failing to maintain complete and accurate books and records of Medrite Care and supporting documentation of the transactions with respect to Medrite Care's business.

212.    Fisch also breached the Operating Agreement by failing to "devote such time to the business and affairs as is necessary to carry out the duties as set forth in the Agreement."

213.    Fisch was also grossly negligent and acted in bad faith in the performance of his duties as Working Member of Medrite Care, in violation of his implied duty of good faith under the Operating Agreement.

214.    Weiss and Medrite Care incurred, and continue to incur, damages, as a direct and proximate result of Fisch's breaches of the Operating Agreement, which were done intentionally and in bad faith.

## FIFTEENTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendans – Derivative Claim)

215.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

216.    Through the wrongful course of conduct and actions complained of herein, Defendants were, and continue to be, unjustly enriched at the expense of, and to the detriment of Medrite Care. The wrongful conduct was continuous and resulted in ongoing harm to Medrite Care.

217.    Plaintiff, as Investing Member of Medrite Care, seeks restitution from Defendants on behalf of Medrite Care, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants as a result of their wrongful course of conduct.

## SIXTEENTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants – Individual and Direct Claim)

218.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

219.    Through the wrongful course of conduct and actions complained of herein, Defendants were, and continue to be, unjustly enriched at the expense of, and to the detriment of Weiss. The wrongful conduct was continuous and resulted in ongoing harm to Weiss.

220.    Weiss and Medrite Care seek restitution from Defendants and seek an order of this Court disgorging all profits, benefits, and other compensation obtained from Weiss and Medrite Care as a result of Defendants' wrongful course of conduct.

## SEVENTEENTH CAUSE OF ACTION
### (Fraud – Derivative Claim)

221.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

41

222.    Pursuant to the Operating Agreement, any transaction or series of related transactions exceeding $25,000 requires the prior consent of Weiss as Investing Member.

223.    Medrite Care's retention of Supreme as its billing agent contemplated a transaction or series of related transactions exceeding $25,000 and therefore required the prior consent of Weiss as Investing Member.

224.    Weiss was fraudulently induced to give his prior consent on behalf of Medrite Care to the retention of Supreme based on Fisch's false representations that (i) Fisch would cause Medrite Care to acquire a 50% ownership interest in Supreme and (ii) Medrite Care would receive a percentage of the fees earned by Supreme from its servicing of pre-existing and new third-party clients.

225.    Fisch knew the foregoing representations were false and he made them in order to induce Weiss to give his consent on behalf of Medrite Care to retain Supreme as its billing agent.

226.    Weiss reasonably relied on the representations of Fisch as Working Member of Medrite Care and, if not for the representations, Weiss would not have consented to the retention of Supreme as Medrite Care's billing agent.

227.    Medrite Care incurred damages as a result of the retention of Supreme as Medrite Care's billing agent.

## EIGHTEENTH CAUSE OF ACTION
### (Fraud – Individual and Direct Claim)

228.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

229.    Pursuant to the Operating Agreement, any transaction or series of related transactions exceeding $25,000 requires the prior consent of Weiss as Investing Member.

230.    Medrite Care's retention of Supreme as its billing agent contemplated a transaction or series of related transactions exceeding $25,000 and therefore required the prior consent of Weiss as Investing Member.

231.    Weiss was fraudulently induced to give his prior consent on behalf of Medrite Care to the retention of Supreme based on Fisch's false representations that (i) Fisch would cause Medrite Care to acquire a 50% ownership interest in Supreme and (ii) Medrite Care would receive a percentage of the fees earned by Supreme from its servicing of pre-existing and new third-party clients.

232.    Fisch knew the foregoing representations were false and he made them in order to induce Weiss to give his consent on behalf of Medrite Care to retain Supreme as its billing agent.

233.    Weiss reasonably relied on the representations of Fisch as Working Member of Medrite Care and, if not for the representations, Weiss would not have consented to the retention of Supreme as Medrite Care's billing agent.

234.    Weiss and Medrite Care incurred damages as a result of the retention of Supreme as Medrite Care's billing agent.

### NINETEENTH CAUSE OF ACTION
### (Declaratory Judgment – Derivative Claim)

235.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

236.    Pursuant to the Operating Agreement, "if an additional capital call is made, the Members agree to contribute additional capital in the same percentage as their respective share in the Company at the time the call is made.  If a Member fails to make an additional capital contribution in the same percentage as their existing share in the Company, the remaining Members may elect to i) dissolve the Company or ii) contribute the other member's percentage

share and receive a corresponding increase in the contributing members [sic] equity in the Company."

237.    Because Fisch did not make corresponding Additional Capital Contributions based on his percentage share in Medrite Care, the effect of the Additional Capital Contributions made by Weiss was to divest Fisch of any ownership interest in Medrite Care and to transfer Fisch's 40% interest to Weiss, such that Weiss became the sole owner of Medrite Care.

238.    However, Fisch never relinquished his ownership interest in Medrite Care and, to date, has continued to assert authority and control over Medrite Care and its assets and resources as if he remained the Working Member of Medrite Care.

239.    An actual, present and justiciable controversy has arisen between the parties concerning the ownership of Medrite Care.

240.    Medrite Care seeks declaratory judgment from this Court that Weiss is the sole member and owner of 100 percent of the equity of Medrite Care.

## TWENTIETH CAUSE OF ACTION
### (Declaratory Judgment – Individual and Direct Claim)

241.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

242.    Pursuant to the Operating Agreement, "if an additional capital call is made, the Members agree to contribute additional capital in the same percentage as their respective share in the Company at the time the call is made.  If a Member fails to make an additional capital contribution in the same percentage as their existing share in the Company, the remaining Members may elect to i) dissolve the Company or ii) contribute the other member's percentage share and receive a corresponding increase in the contributing members [sic] equity in the Company."

243.    Because Fisch did not make corresponding Additional Capital Contributions based on his percentage share in Medrite Care, the effect of the Additional Capital Contributions made by Weiss was to divest Fisch of any ownership interest in Medrite Care and to transfer Fisch's 40% interest to Weiss, such that Weiss became the sole owner of Medrite Care.

244.    However, Fisch never relinquished his ownership interest in Medrite Care and, to date, has continued to assert authority and control over Medrite Care and its assets and resources as if he remained the Working Member of Medrite Care.

245.    An actual, present and justiciable controversy has arisen between the parties concerning the ownership of Medrite Care.

246.    Weiss and Medrite Care seek declaratory judgment from this Court that Weiss is the sole member and owner of 100 percent of the equity of Medrite Care.

## TWENTY-FIRST CAUSE OF ACTION
### (Preliminary and Permanent Injunction – Derivative Claim)

247.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

248.    The Operating Agreement provides:

> The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury.  Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

249.    As described above, Fisch has committed and continues to commit numerous breaches of the Operating Agreement, including, but not limited to the de facto merger of Medrite Care with the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices, and

the diversion of Medrite Care's assets, resources and business for the benefit of Fisch, the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices.

250.   Medrite Care has incurred irreparable harm as a result of such breaches.

251.   Injunctive relief, including is therefore appropriate and necessary in order to prevent further irreparable harm to Medrite Care.

## TWENTY-SECOND CAUSE OF ACTION
### (Preliminary and Permanent Injunction – Individual Claim)

252.   Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

253.   As described above, Fisch has committed and continues to commit numerous breaches of the Operating Agreement, including, but not limited to the de facto merger of Medrite Care with the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices, and the diversion of Medrite Care's assets, resources and business for the benefit of Fisch, the Defendant LLCs, Unauthorized Businesses and Unaffiliated Practices.

254.   Weiss and Medrite Care have incurred irreparable harm as a result of such breaches.

255.   Injunctive relief is therefore appropriate and necessary in order to prevent further irreparable harm to Weiss and Medrite Care.

## TWENTY-THIRD CAUSE OF ACTION
### (Conversion Against All Defendants– Derivative Claim)

256.   Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

257.   Defendants have unlawfully exercised control over the property of Medrite Care to the exclusion of and interference with Medrite Care's possessory rights in such property,

including, *inter alia*, the use and diversion of funds held in the Medrite Care Accounts and the MMC Accounts, the use and diversion of the Contributions and Loans, the use and diversion to Defendants of supplies paid for by and belonging to Medrite Care, and the use and diversion of Medrite Care's offices, equipment and other assets for Defendants' own benefit.

258.    Medrite Care has incurred, and continues to incur, damages as a result of Defendants' unlawful conversion of its property.

## TWENTY-FOURTH CAUSE OF ACTION
### (Conversion Against All Defendants – Individual and Direct Claim)

259.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

260.    Defendants have unlawfully exercised control over the property of Weiss and Medrite Care to the exclusion of and interference with their possessory rights in such property, including, *inter alia*, the use and diversion of funds held in the Medrite Care Accounts and the MMC Accounts, the use and diversion of the Contributions and Loans, the use and diversion to Defendants of supplies paid for by and belonging to Medrite Care, and the use and diversion of Medrite Care's offices, equipment and other assets for Defendants' own benefit.

261.    Weiss and Medrite Care have incurred, and continue to incur, damages as a result of Defendants' unlawful conversion of their property

## TWENTY-FIFTH CAUSE OF ACTION
### (Tortious Interference with the Management Agreement Against All Defendants – Derivative Claim)

262.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

263.    The Management Agreement is a valid contract between Medrite Care and MMC and required MMC.  As the Working Member of Medrite Care, Fisch and, through Fisch, the

other defendants, knew about the Management Agreement and MMC's obligation pursuant to the Management Agreement to engage Medrite Care as MMC's exclusive provider of administrative and management services.

264.    Through their actions described herein, Defendants have intentionally and improperly caused MMC to breach the Management Agreement by, *inter alia*, causing MMC to engage the Defendant LLCs to provide administrative and management services to MMC, including the use of one or more of the MMC Accounts and the Medrite Care Accounts for the Unauthorized Businesses, despite knowing that Medrite Care had the exclusive right under the Management Agreement to service MMC,

265.    Medrite Care has incurred, and continues to incur, damages as a result of Defendants' tortious conduct.

**TWENTY-SIXTH CAUSE OF ACTION**
**(Tortious Interference with the Management Agreement Against All Defendants –**
**Individual and Direct Claim)**

266.    Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

267.    The Management Agreement is a valid contract between Medrite Care and MMC and required MMC.  Fisch, by virtue of his involvement in  Medrite Care, and through Fisch, the other defendants, knew about the Management Agreement and MMC's obligation pursuant to the Management Agreement to engage Medrite Care as MMC's exclusive provider of administrative and management services.

268.    Through their actions described herein, Defendants have intentionally and improperly caused MMC to breach the Management Agreement by, *inter alia*, causing MMC to engage the Defendant LLCs to provide administrative and management services to MMC, including the use of one or more of the MMC Accounts and the Medrite Care Accounts for the

Unauthorized Businesses, despite knowing that Medrite Care had the exclusive right under the Management Agreement to service MMC,

269.     Weiss and Medrite Care have incurred, and continue to incur, damages as a result of Defendants' tortious conduct.

## TWENTY-SEVENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Advantage Against All Defendants – Derivative Claim)

270.     Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

271.     Medrite Care has accumulated substantial goodwill in the course of operating its business.   As such, Medrite has acquired numerous prospective opportunities to expand its services to new clients in New York and elsewhere.

272.     Fisch, by virtue of his involvement in  Medrite Care, and through Fisch, the other defendants, knew about Medrite's prospective business opportunities.

273.     Despite their knowledge, Defendants intentionally, unlawfully and maliciously interfered with such prospective business opportunities through, *inter alia*, their unauthorized and illegal use of the Medrite Trade Dress to advertised the Unauthorized Businesses and Unaffiliated Practices on the Medrite Care website and elsewhere.

274.     Through their actions, Defendants diverted Medrite Care's prospective business opportunities from Medrite Care to Defendants.

275.     Medrite Care has incurred, and continues to incur, damages as a result of Defendants' tortious conduct.

## TWENTY-EIGHTH CAUSE OF ACTION
### (Tortious Interference with Prospective Advantage Against All Defendants – Individual and Direct Claim)

276.   Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein

277.   Plaintiff repeats and realleges each of the allegations set forth in each preceding paragraph, as if fully set forth herein.

278.   Medrite Care has accumulated substantial goodwill in the course of operating its business.   As such, Medrite has acquired numerous prospective opportunities to expand its services to new clients in New York and elsewhere.

279.   Fisch, by virtue of his involvement in  Medrite Care, and through Fisch, the other defendants, knew about Medrite's prospective business opportunities.

280.   Despite their knowledge, Defendants intentionally, unlawfully and maliciously interfered with such prospective business opportunities through, inter alia, their unauthorized and illegal use of the Medrite Trade Dress to advertise and market the Unauthorized Businesses and Unaffiliated Practices on the Medrite Care website and elsewhere.

281.   Through their actions, Defendants diverted Medrite Care's prospective business opportunities from Medrite Care to Defendants.

282.   Weiss and Medrite Care have incurred, and continue to incur, damages as a result of Defendants' tortious conduct.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

A.   Directing Defendants to provide an accounting of all activities, assets, liabilities and accounts of Medrite Care and each defendant and its affiliates, including each Unauthorized Business and Unaffiliated Practice, and (ii) an opportunity to review all books and records of Medrite Care and all books and records of and/or related to each defendant and its affiliates;

B.      Awarding Plaintiff compensatory damages, the precise amount to be determined at trial, but no less than $10,000,000.00, plus prejudgment interest at the maximum legal rate;

C.      Awarding Plaintiff punitive damages, treble damages and penalties;

D.      Awarding Medrite Care and Weiss restitution from Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants at the expense of Medrite Care;

E.      Declaring and adjudging Weiss the sole owner and member of Medrite Care;

F.      Declaring and adjudging that Plaintiffs have a valid, protectable interest in the Medrite Care name and Medrite Care's other Trade Dress under the Lanham Act and New York law;

G.      Awarding Plaintiffs temporary and permanent injunctive and other relief, as follows:

   1.   enjoining Fisch from acting as Working Member and Manager or in any other capacity on behalf of Medrite Care;

   2.   enjoining Defendants and/or their affiliates from using and/or accessing any bank or other financial accounts of Medrite Care and MMC, including, but not limited to, the Medrite Care Accounts and the MMC Accounts;

   3.   enjoining Defendants and/or their affiliates from using and/or accessing the Unauthorized Accounts;

   4.   issuing a pre-judgment attachment of the Medrite 72 Tax Account;

   5.   issuing a pre-judgment asset restraining injunction against the Medrite Care Accounts, the MMC Accounts, the Unauthorized Accounts and any other accounts, funds or other assets, wherever held, that defendants receive(d) from Plaintiffs or MMC prior to or during the pendency of this action;

   6.   enjoining Defendants and/or their affiliates from using the Medrite Care name and Medrite Care's other Trade Dress for any purpose;

   7.   enjoining Defendants and/or their affiliates from marketing, advertising or making and/or maintaining any references to Defendants, the Unauthorized Businesses or the Unaffiliated Practices through or on the Medrite Care website; and

   8.   enjoining Defendants and/or their affiliates from making and/or maintaining any reference to the Medrite Care name and other Trade Dress on the store fronts, awnings, advertisements and all other marketing materials of Defendants, the Unauthorized Businesses or the Unaffiliated Practices.

9. enjoining Supreme from acting in any capacity on behalf of Medrite Care, including, but not limited to, serving as the billing agent for Medrite Care and/or MMC.

10. Appointing iClaim Inc. as temporary receiver to take control of Medrite Care and manage its affairs and operations and to access the Medrite Care Accounts and the MMC Accounts for the purpose of making payments on behalf of Medrite Care and/or MMC as necessary in the ordinary course of business.

H.   Awarding Plaintiff attorney's fees, costs and disbursements of this action; and

I.   Granting such other and further relief as the Court deems just and proper.

Dated: Valley Stream, New York
May 3, 2020

**JACOBOWITZ NEWMAN TVERSKY LLP**
*Attorneys for Plaintiff*

By:   /s Nathan Cohen
     Nathan Cohen
     Evan M. Newman
377 Pearsall Avenue, Suite C
Cedarhurst, New York, 11516
Tel: (212) 612-1110
Email: ncohen@jntlllp.com

## VERIFICATION

STATE OF NEW YORK )
                       :ss:

COUNTY OF KINGS    )

        HENRY WEISS, who does not swear for religious reasons, hereby affirms the truth of the truth of the following:

        1.      That I am a plaintiff and member and authorized signatory of the other plaintiffs in the above captioned matter and am fully familiar with the facts and circumstances of this action.

        2.      That I have read the foregoing verified complaint and know the contents thereof.

        3.      That the same is true of my own knowledge, except as to those matters alleged upon information and belief. As to those matters stated to be alleged upon information and belief, I believe them to be true, based upon my review of personal and business records, conversations with my attorney and others and independent investigations.

                                          _Henry Weiss_

                                          HENRY WEISS

Affirmed to before me this
 3  day of May    , 2020

_____
Notary Public

MENDEL KLEIN
NOTARY PUBLIC STATE OF NEW YORK
No. 01KL6200703
Qualified in Kings County
My Commission Expires February 09, 2021