**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x

MEDRITE CARE, LLC, MEDRITE 22ND     :
LLC, MEDRITE 72 LLC, MEDRITE BH LLC, :
MEDRITE MIDTOWN WEST LLC, AND       :
HENRY WEISS individually and derivatively :
on behalf of MEDRITE CARE, LLC,     :
MEDRITE 22ND LLC, MEDRITE 72 LLC,   :
MEDRITE BH LLC AND MEDRITE          :
MIDTOWN WEST LLC,                    :
                                     :
                    Plaintiffs,      :
                                     :
          v.                         :
                                     :
MEDRITE 243 LLC, MEDRITE EAST SIDE   :
LLC MEDRITE HAVERSTRAW LLC,          :
MEDRITE HOLDINGS LLC, MEDRITE LLC,   :
MEDRITE MANAGEMENT LLC, MEDRITE      :
MTVERNON LLC, MEDRITE MYRTLE         :
LLC, MEDRITE NYC LLC, MEDRITE        :     Civil Action No. 1:20-cv-3456 (MKV)
SPRING VALLEY LLC, NEW MEDRITE       :
CARE NEW YORK INTERNATIONAL LLC,     :
MEDRITE 41 LLC, MEDRITE MEDICAL      :     **COUNTERCLAIMS AND**
CARE, PA, SUPREME MEDICAL            :     **THIRD-PARTY COMPLAINT**
MANAGEMENT LLC and SAMUEL            :
FISHMAN a/k/a SAMUEL FISCH,          :
                                     :
                    Defendants,      :
                                     :
          and                        :
                                     :
MEDRITE CARE, LLC, MEDRITE 22ND      :
LLC, MEDRITE 72 LLC, MEDRITE BH LLC, :
and MEDRITE MIDTOWN WEST LLC,        :
                                     :
                    Nominal Defendants. :
...................................................... :
SAMUEL FISHMAN a/k/a SAMUEL FISCH    :
                                     :
                    Counterclaim-Plaintiff :
                    and Third-Party Plaintiff, :
          v.                         :
                                     :

HENRY WEISS,                                    :
                                               :
                    Counterclaim-Defendant,  :
                                               :
        and                                    :
                                               :
EVA WEISS,                                     :
                                               :
                    Third-Party Defendant.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff Samuel Fisch, by and through his

attorneys, for his Counterclaims against Plaintiff/Counterclaim-Defendant Henry Weiss and his

Third-Party Complaint against Third-Party Defendant Eva Weiss (collectively, "Weiss") alleges

as follows:[1]

## NATURE OF THE CASE

1.      This is an action for declaratory judgment pursuant to the Federal Declaratory

Judgments Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

2.      From the outset of this suit, Weiss has flouted the authority of this Court.  In

doing so, Weiss has also blatantly violated the contractual rights of Defendant Samuel Fisch

under the Limited Liability Company Agreement ("LLC Agreement" or "Agreement") of

Medrite Care, LLC ("Medrite Care").  Although the LLC Agreement plainly and unambiguously

provides that Fisch, as the sole Working Member and Manager of Medrite Care, has the

---

[1] This Counterclaim is submitted in advance of Fisch's deadline to answer the Complaint in this action to enable Fisch to seek emergency temporary injunctive relief.  Fisch respectfully submits that an Answer is not required at this time because the deadline for responding to the Complaint has not expired, the parties agree that this matter should be resolved by a properly constituted Beth Din, and Plaintiffs have announced an intent to amend their Complaint.  To the extent this action remains pending in this Court at the deadline for responding to the Complaint, and has not been superseded by an amended pleading or stayed or dismissed in favor of arbitration at the Beth Din, Defendants will serve an answer or motion at that time.  To the extent a response to the Complaint is required at this time, Fisch denies the allegations directed at his conduct and denies knowledge or information sufficient to form a belief as to the truth of the allegations directed at the conduct of others, except admits that this Court has jurisdiction over Defendants.

exclusive authority to manage the day-to-day operations of the business, Weiss has exercised improper and illegal self-help to drain the company's bank accounts and wrongfully exclude Fisch from management of the operations, without regard to the warnings issued by this Court, the terms of a restraining order issued by his own appointed rabbinic arbitrator or allowing the legal process to resolve this matter either before a Beth Din (*i.e.*, Jewish Court) or this Court.

3.      Weiss' actions have included the purported removal of Fisch as the Working Member and Manager of Medrite Care via an illegitimate and insufficient written consent; the illegal transfer of more than $730,000 from Medrite Care's bank accounts at Chase Bank to the Weiss' personal bank accounts; and suspending Fisch's access to and use of the Medrite Care Capital One credit card.  These actions have caused payroll and other vendor payments to be returned for insufficient funds and prevented Medrite Care from ordering necessary supplies.

4.      The consequences of Weiss' actions are borne not just by Fisch, but also by the public.  Medrite Care and other urgent care centers with the Medrite name (the "Medrite Entities") administer thousands of COVID-19 tests per day in New York City, the epicenter of the COVID-19 pandemic.  Without sufficient funds left in the Medrite Care accounts, Medrite Care or the other Medrite Entities are likely to have to suspend or reduce operations as early as next week.

5.      Weiss' actions have no basis under the LLC Agreement or the law, and unless stopped through this declaratory action, Weiss will continue wrongfully to interfere with Medrite Care's business.  Fisch therefore seeks this declaratory judgment action to protect both his rights and the welfare of the public.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because the claims asserted herein are so related to the claims in Plaintiff/Counterclaim-Defendants' Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

7. An actual and substantial controversy exists between the Parties within the meaning of 28 U.S.C. § 2201 that is of sufficient immediacy and reality to warrant declaratory relief.

8. The United States District Court for the Southern District of New York has personal jurisdiction over each Plaintiff/Counterclaim-Defendant and Third-Party Defendant named herein because each Plaintiff/Counterclaim-Defendant and Third-Party Defendant (i) is a citizen of the State of New York, (ii) has agreed as a Member of Medrite Care to submit to the personal jurisdiction of this Court under § 9.8 of the LLC Agreement, or (iii) has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (i) a substantial part of the events or omissions giving rise to the claims occurred in this District, (ii) one or more Plaintiffs/Counterclaim-Defendants are subject to the Court's personal jurisdiction in this District, and (iii) all Members of Medrite Care have agreed to this venue under § 9.8 of the LLC Agreement.

4

## CHOICE OF LAW

10.     The parties have agreed under Section 9.5 of the LLC Agreement that the applicable law with regard to the interpretation of and performance under the Agreement is the "internal law, not the law of conflicts, of the State of New York." LLC Agreement § 9.5

## PARTIES

11.     Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff Samuel Fisch is a Member and the Manager of Medrite Care, LLC, and owns 40% of the membership interests.

12.     Plaintiff/Counter-Defendant Henry Weiss is a Member of Medrite Care, LLC, and owns 50% of the membership interests.

13.     Plaintiff/Third-Party Defendant Eva Weiss is a Member of Medrite Care, LLC, and owns 10% of the membership interests.

## FACTUAL ALLEGATIONS

### The LLC Agreement

14.     Mr. Weiss and Fisch entered into the LLC Agreement in October 2010.

15.     The LLC Agreement defines Fisch as the Working Member. *See* LLC Agreement, Preamble. The Agreement provides that "[t]he day to day operations of the Company shall be managed by the Working Member, referred to herein as the Manager, subject to the provisions of this Agreement." LLC Agreement § 5.1.

16.     The Agreement further specifies that the "Manager shall have executive and administrative authority of the day-to-day operation of the business, financing and affairs of the Company [which . . .] shall not include matter involving any expenditure (or series of related expenditures), obligation, salary, or indebtedness in excess of $25,000." *Id.* § 5.1.2(a).

17.     The Agreement also states that the Manager "upon obtaining the requisite consent, shall have full, exclusive, and complete discretion, power and authority, subject in all cases to the other provisions of this Agreement and the requirements of applicable law, to manage, control, administer, and operate the day to day business and affairs of the Company for the purposes herein stated, and to make all decisions affecting such business and affairs." *Id.* § 5.1.2(c).

18.     In contrast, the LLC Agreement makes clear that "No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member.  This Section supersedes any authority granted to the Members pursuant to Section 401 of the Uniform Limited Liability Act.  Any Member who takes any action or binds the Company in violation of this Section shall be solely responsible for any loss and expense incurred by the Company as a result of the unauthorized action and shall indemnify and hold the Company harmless with respect to the loss or expense." *Id.* § 5.1.7.

19.     Section 5.1.6 of the LLC Agreement specifies the limited circumstances in which the Manager can be replaced.  Specifically, "[a] Manager may resign as Manager at any time.  If a Manager becomes subject to an Event of Involuntary Withdrawal, he shall be deemed to have resigned as a Manager.  Upon the resignation of a Manager, or upon his removal pursuant to this subsection, his or his successor shall be designated by the affirmative vote of the Members holding a majority of the Membership Interests." *Id.* § 5.1.6.  The Agreement does not otherwise permit removal of the Manager or provide for removal without cause.

20.     Moreover, the structural protections of the LLC Agreement reinforce that Fisch's rights as the exclusive Manager cannot be changed or diminished without his consent.  In that

regard, the LLC Agreement cannot be amended without the written consent of Members holding at least two-thirds (2/3rds) of the Membership Interests. *Id.* § 9.4.

21.     Similarly, under § 5.2(a) of the Agreement, while either the Manager or Members holding at least 50% of the Membership Interests then held by Members may call a meeting of Members, a quorum to conduct business requires "the presence in person or by proxy of Members holding not less than a two-thirds (2/3rds) of the Membership Interests then held by Members." *Id.* § 5.2(a).  That is, no action can be taken by Members unless both Henry Weiss and Fisch attend a meeting in person or by proxy.

22.     Likewise, the LLC Agreement permits action by written consent, but only upon "the consent of Members holding such Membership Interests then held by Members as would be required to take action under this Agreement," *Id.* § 5.2(b).

23.     Weiss recognized and agreed that "money damages will be inadequate to fully remedy the injury" from a breach of these or any other provisions of the LLC Agreement, and that in addition to any other available remedies, the "party who may be injured . . . shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach." *Id.* § 9.3.

**The Court's Order Vacating The TRO And Denying All Plaintiffs' Requested Relief**

24.     On May 4, 2020, Plaintiffs filed their Complaint in this case.

25.     On that same day, Plaintiffs made an application for an emergency order to show cause for an *ex parte* temporary restraining order and/or preliminary injunction and pre-judgment attachment that broadly sought to enjoin Fisch from managing Medrite Care or operating any of the other Medrite Entities.

7

26.     The Court granted an *ex parte* temporary restraining order for the limited purpose of maintaining the status quo until the Court could hold a hearing on the pending preliminary injunction.

27.     At the May 7, 2020, telephonic conference, and as memorialized in an order on the May 8, 2020, the Court vacated the temporary restraining order and denied all injunctive relief requested by Plaintiffs, stating, among other reasons, that "the balance of hardships and *the public interest weigh heavily against granting injunctive relief . . . particularly in light of defendants' ongoing work administering testing in connection with the COVID-19 pandemic.*"

28.     At the same hearing, the Court also rejected Mr. Weiss' claim of sole ownership of Medrite Care based on his unsubstantiated allegations that he had made capital calls after his initial investment and that Fisch had failed to contribute his pro rata share of any such capital calls. The Court explained that Weiss could bring a declaratory judgment claim seeking a declaration to that effect, on which he would bear the burden of proof, but his mere assertion did not make it so.

29.     The Court also warned all counsel on the record at the close of the hearing that "you need to admonish your client that if he is taking action that is *arguably* in breach of the agreement *or violates the spirit of what the Court has ordered, there will be repercussions.*" Hearing Tr. 31:24-32:2 (emphasis added).

30.     Mr. Weiss has intentionally flouted this Court's clear warnings. Notwithstanding the orders on the record during the May 7 hearing, Plaintiffs not only failed to advise Chase Bank that the TRO had been lifted and to restore Fisch's access to the Medrite Entities' accounts, but went a step further and froze Medrite Care's credit card accounts with Capital One. Mr. Weiss' actions breached the LLC Agreement, including §§ 5.1, 5.1.2(a), 5.1.2(c), 5.1.7, and 9.3.

31.     Defendants' counsel attempted, without success, to address that issue with Plaintiffs' counsel on the afternoon of Friday, May 8.

32.     Further, once Defendants' counsel received the Court's Order shortly before Shabbat on Friday, May 8, Fisch immediately forwarded the Order to Chase, but it took until Monday, May 11, for the Order to be processed and the hold on the Medrite Entities' accounts to be lifted.

33.     Shortly thereafter, Weiss accessed the Chase accounts and transferred more than $730,000 from the Medrite Entities' accounts to their personal account, in two large transfers of approximately $427,000 and $303,000.  Weiss' actions breached the LLC Agreement, including §§ 5.1, 5.1.2(a), 5.1.2(c), 5.1.7, and 9.3.

34.     In addition to violating this Court's direction at the May 7 hearing, the transfers to the Weiss' personal accounts directly violate the *ex parte* TRO that had been issued by the rabbinic arbitrator *appointed by Mr. Weiss* prior to this action being filed.  Again, the undersigned attempted to address this issue with Plaintiffs' counsel, by email on Monday evening, May 11, at 6:17p.m.

35.     Plaintiffs' counsel finally responded by email at 11:41p.m. on Monday, May 11. But he still did not address the Weiss' freezing of the Capital One credit cards or unauthorized transfer of more than $730,000 from the Medrite Entities' Chase accounts to their personal accounts.

36.     Rather, Plaintiffs' attorney attached a purported notice of removal of Fisch as the sole manager of Medrite Care based on Plaintiffs' unsubstantiated contention that Fisch no longer holds membership interests in the company and served as the Manager solely pursuant to an allegedly at-will employment relationship, and alternatively that even if Fisch remained the

Working Member he could be removed by written consent of Weiss as the owners of the majority of the membership interests. Weiss' actions breached the LLC Agreement, including §§ 5.1, 5.1.2(a), 5.1.2(c), 5.1.6, 5.1.7, 5.2(a) and (b), 9.3, and 9.4.

37.     Mr. Weiss has since advised Fisch that he intends to replace him with another manager before the week's end. Such an action would violate the LLC Agreement, including §§ 5.1, 5.1.2(c), 5.1.6, 5.1.7, 5.2(a) and (b), 9.3, and 9.4

## CAUSES OF ACTION

## COUNT I

**Declaratory Judgment That Fisch Is
The Sole Working Member and Manager of Medrite Care LLC**

38.     Fisch incorporates by reference the allegations set forth in the preceding paragraphs of this Counterclaim.

39.     Because neither Mr. Weiss nor Mrs. Weiss is a Working Member or Manager of Medrite Care, neither has the authority under the Agreement to interfere with the management of the day-to-day operations of Medrite Care or to themselves manage the day-to-day operations of Medrite Care.

40.     Weiss had no authority to freeze any credit cards under the name of Medrite Care or the Medrite entities, transfer funds from the Medrite Care bank accounts to Weiss' personal accounts, or remove Fisch from his position as Manager of Medrite Care.

41.     As the Working Member and sole Manager of Medrite Care, only Fisch possesses the exclusive authority under the Agreement to manage the day-to-day operations of Medrite Care.

42.     As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient and substantial immediacy exists between Fisch and Weiss as to

whether under the LLC Agreement anyone other than Fisch is the Working Member or a Manager who can act on behalf of or otherwise manage the day-to-day operations of Medrite Care.

## COUNT II

### Declaratory Judgment That The Actions Taken By Weiss Purportedly To Remove or Replace Fisch As The Working Member or Manager of Medrite Care Are Invalid

43.     Fisch incorporates by reference the allegations set forth in the preceding paragraphs of this Counterclaim.

44.     Weiss's purported attempt to remove Fisch as the Working Member and Manager of Medrite Care is null and void because § 5.1.6 of the LLC Agreement provides the limited circumstances under which Fisch can be replaced as Manager.

45.     Furthermore, even if Fisch could be removed as Manager, Weiss never fulfilled, and cannot fulfill, the requirements necessary for Members to take action under the LLC Agreement.  Weiss never had a sufficient portion of the Membership Interests to meet the 2/3 of Membership Interest quorum required for Members to conduct business or to amend the terms of the LLC Agreement.

46.     As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient and substantial immediacy exists between Fisch and Weiss as to whether under the LLC Agreement Weiss has the power to remove Fisch as the Working Member and Manager of Medrite Care.

## COUNT III

### Declaratory Judgment That The Transfer By Weiss Of $730,000 From The Medrite Care Bank Accounts Was Unauthorized, Impermissible And Invalid

11

47.     Fisch incorporates by reference the allegations set forth in the preceding paragraphs of this Counterclaim.

48.     Because Weiss never had authority to act on behalf of or manage the day-to-day operations of Medrite Care, the transfer of funds from the Medrite Care bank accounts to the Weiss' bank accounts was impermissible and unauthorized and is invalid.

49.     Moreover, in the event the Manager authorizes a distribution from the Medrite Care bank accounts to Members, any such distribution must comply with the distribution waterfall set forth in Section 4.1 of the LLC Agreement, which would require distribution to Fisch of his pro rata share of any such distribution.

50.     As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient and substantial immediacy exists between Fisch and Weiss as to the legitimacy of the transfer of $730,000 from the Medrite Care bank accounts to Weiss' personal bank accounts.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff Fisch prays for judgment as follows:

a.     A declaration that Fisch is and remains the sole Working Member and Manager of Medrite Care;

b.     A declaration that the actions taken by Weiss purportedly to remove Fisch as the sole Working Member and Manager of Medrite are invalid;

c.     A declaration that the transfer by Weiss of more than $730,000 from the Medrite Care bank accounts to Weiss' personal accounts is invalid and that all funds must be restored to the Medrite Care bank accounts; and

12

d.    Any further relief to which the Defendant/Counterclaim-Plaintiff/Third-Party

Plaintiff Weiss is entitled.

Dated:  New York, New York
        May 15, 2020

                                        /s/  *Neil Steiner*
                                        Neil Steiner
                                        Pat Andriola
                                        DECHERT LLP
                                        Three Bryant Park
                                        1095 Avenue of the Americas
                                        New York, New York  10036
                                        (212) 698-3500