UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEDRITE CARE, LLC, et. al.,

                Plaintiffs,

-against-

MEDRITE 243 LLC, et. al.,

                Defendants.

1:20-cv-3456

Hon. Mary Kay Vyskocil

# DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, STAY THE PROCEEDINGS

DECHERT LLP
Neil Steiner
Pat Andriola
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants*

-i-

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I. FACTUAL AND PROCEDURAL HISTORY ............................................................. 1

II. ARGUMENT .................................................................................................................. 3

    A. There is a Valid Agreement to Arbitrate ............................................................ 4

III. CONCLUSION ............................................................................................................... 8

## **TABLE OF AUTHORITIES**

**PAGES(S)**

**CASES**

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
  No. 1:18-CV-3969-GHW, 2020 WL 137110 (S.D.N.Y. Jan. 13, 2020) .................................4

*Astra Footwear Indus. v. Harwyn Int'l, Inc.*,
  442 F. Supp. 907 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978) .....................................7, 8

*BankUnited, N.A. v. Blue Wolf Investments, LLC*,
  No. 118CV8196JGKKHP, 2019 WL 3416084 (S.D.N.Y. July 1, 2019), *report
  and recommendation adopted*, No. 18-CV-8196 (JGK), 2019 WL 3409398
  (S.D.N.Y. July 26, 2019) ......................................................................................................5

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020) ........................................3

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ..............................................................................................................4

*Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*,
  93 N.Y.2d 584 (1999) ...........................................................................................................5

*Feld v. Postmates, Inc.*,
  No. 19-CV-3899 (PKC), 2020 WL 1047055 (S.D.N.Y. Mar. 3, 2020) .................................4

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
  No. 15 CIV. 2030 (ER), 2016 WL 3571387 (S.D.N.Y. June 27, 2016) .................................4

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
  372 F.2d 753 (2d Cir. 1967) ..................................................................................................5

*Hoodho v. Holder*,
  558 F.3d 184 (2d Cir. 2009) ..................................................................................................6

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) ..................................................................................................3

*Kolchins v. Evolution Markets, Inc.*,
  31 N.Y.3d 100 (2018) ...........................................................................................................5

*Kopple v. Stonebrook Fund Mgmt., LLC*,
  794 N.Y.S.2d 648 (App. Div. 1st Dept. 2005) .....................................................................5

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*,
  434 N.Y.S.2d 359 (1980) ......................................................................................................7

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ..................................................................................................3

*Morelli v. Alters*,
    No. 1:19-CV-10707-GHW, 2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020) ............................4

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*,
    775 F.3d 145 (2d Cir. 2014) ................................................................................................4

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ................................................................................................4

*Roxborough Apartments Corp. v. Kalish*,
    909 N.Y.S.2d 862 (1st Dep't 2010) .....................................................................................6

*Setevage v. Dep't of Homeland Sec.*,
    539 F. App'x 11 (2d Cir. 2013) ............................................................................................6

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
    487 F.3d 89 (2d Cir. 2007) ..................................................................................................7

**STATUTES**

9 U.S.C. § 3..................................................................................................................................3

9 U.S.C. § 4..................................................................................................................................3

**OTHER AUTHORITIES**

5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed.1998) ..................................4

**PRELIMINARY STATEMENT**

Plaintiffs and Defendants have many disagreements regarding this dispute, but they agree on one thing: this Court is not the appropriate forum for this action. The parties have instead agreed to bring this matter to a Beth Din, a Jewish court of law. Indeed, both sides have already begun proceedings to empanel a Beth Din, with each side having selected its party-appointed rabbinic arbitrator. While it appears from Plaintiffs' conduct over the past week that the Court unfortunately will need to continue to be involved to maintain and enforce the status quo until the Beth Din is constituted, the Court should compel arbitration or resolution of this matter before the Beth Din and, once the Beth Din is functioning, dismiss the Complaint, or in the alternative, stay the proceedings.

**I.     Factual and Procedural History**

On May 4, 2020, Plaintiffs filed suit against Defendants, alleging twenty-eight causes of action. ECF No. 1 (Verified Complaint) ("Compl."). The dispute concerns the ownership and operation of Medrite Care LLC ("Medrite Care"), a limited liability company formed in New York that provides management and administrative services in connection with the operation of Medrite Medical Care PC, a professional corporation owned by Dr. Jeffrey Dick. *See id.* ¶¶ 1; 31-39. According to the Complaint, Medrite Care was formed in 2010 by Plaintiff Henry Weiss and Defendant Samuel Fishman a/k/a Samuel Fisch ("Fisch").[1] *Id.* ¶ 39. Pursuant to the Limited Liability Company Agreement ("LLC Agreement") of Medrite Care, Fisch was the "Working Member" and referred to as the "Manager." LLC Agreement § 5.1. The LLC Agreement further granted Fisch "executive and administrative authority over the day-to-day operations of the business, finances and affairs of the Company." *Id.* § 5.1.2(a). Fisch, as Manager, was given "full,

---

[1]     The Complaint attached the LLC Agreement. *See* ECF No. 2-2.

exclusive, and complete discretion, power, and authority…to manage, control, administer, and operate the day to day business and affairs of the Company." *Id*. § 5.1.2(c). Plaintiffs' claims all involve allegedly unauthorized actions taken by Fisch to expand Medrite Care's operations (the "New Locations") in order to generate business. Compl. ¶¶ 66-107. Critically, in a section of the Complaint entitled "Beis Din," Plaintiffs stated as follows:

> Plaintiffs are religiously bound to bring their dispute in the first instance to a Beis Din – a Jewish court of law – and will serve Defendants with a hazmanah – the Beis Din equivalent of a summons – commanding Defendants' appearance before the Beth Din. Plaintiffs intend to pursue their claims in this Court until such time as Defendants comply with the hazmanah and submit to the jurisdiction of the Beth Din for the resolution of the parties' dispute.

Compl. ¶ 108. Plaintiffs thereafter issued the hazmanah to Defendants. ECF No. 21-2.

Upon filing the Complaint, Plaintiffs concurrently requested *ex parte* an Emergency Order enjoining Fisch from accessing bank accounts and handling operational tasks necessary to run the New Locations. *See* ECF No. 2. On May 5, 2020, this Court entered a temporary restraining order preserving the status quo until it could hear argument on the Order to Show Cause. ECF No. 6. On May 6, Fisch submitted to the Court a declaration opposing the request for an Emergency Order wherein he stated that:

> The Court has instructed me to respond to paragraph 108 of the Complaint. I am willing to bring our dispute to a Beis Din. Weiss has not called me to Beis Din, but chose to try to get a court to exclude me from the business first. In fact, I already issued a Rabbinical Court Summons seeking to call Mr. Weiss to the Beis Din[.]

ECF No. 11 ¶ 2 (and attaching his Beth Din summons (ECF No. 11-1)).

On May 7, 2020, following a hearing, this Court vacated its temporary restraining order and denied Plaintiff's Application for Emergency Relief. ECF No. 17. In ruling, the Court found "that Plaintiffs failed to establish a likelihood of success on the merits on their Lanham Act claims and that the balance of hardships and the public interest weigh heavily against granting injunctive

relief on that basis, particularly in light of defendants' ongoing work administering testing in connection with the COVIID-19 pandemic." *Id.* at 5-6.

Plaintiffs have advised that they intend to amend their Complaint, but have not yet done so. Instead, Plaintiffs have undertaken a self-help campaign to withdraw virtually all funds in Medrite Care's bank accounts and purported to remove Fisch as the Working Member and Manager of Medrite Care. As a result, Fisch has brought a limited counterclaim against Plaintiff Henry Weiss and third-party complaint against his wife, Eva Weiss, for purposes of seeking limited temporary injunctive relief pending referral of this matter to the Beth Din.

## II.   Argument

Pursuant to the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Likewise, a district court may "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. The Federal Arbitration Act "reflects a legislative recognition of 'the desirability of arbitration as an alternative to the complications of litigation.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Wilko v. Swan*, 346 U.S. 427, 431 (1953)), *cert. denied*, 140 S. Ct. 1117 (2020). The FAA embodies "a liberal federal policy favoring arbitration agreements." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). The FAA's underlying policy is "to move the parties to an arbitrable dispute out of court and into arbitration *as quickly and easily as possible*." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (emphasis added) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct

the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).[2]

"The role of federal courts, in ruling on a petition to compel arbitration under the FAA, is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate." *Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 1285513, at *7 (S.D.N.Y. Mar. 18, 2020) (quotations omitted). "Whether an arbitration agreement exists is a matter of state contract law." *Feld v. Postmates, Inc.,* No. 19-CV-3899 (PKC), 2020 WL 1047055, at *3 (S.D.N.Y. Mar. 3, 2020). *See also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("[I]n interpreting an arbitration agreement [courts] apply the principles of state law that govern the formation of ordinary contracts."). "If the Court determines 'that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate.'" *Morelli*, 2020 WL 1285513 at *7 (citing *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015)).

### A. There is a Valid Agreement to Arbitrate

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in

---

[2] Courts in the Second Circuit have acknowledged a "lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15 CIV. 2030 (ER), 2016 WL 3571387, at *4 n. 4 (S.D.N.Y. June 27, 2016) (declining to choose between 12(b)(1) and 12(b)(6) because "the result would be the same under nearly any of the available mechanisms"); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 1998) (discussing conflicting precedent); *Am. E Grp. LLC v. Livewire Ergogenics Inc.*, No. 1:18-CV-3969-GHW, 2020 WL 137110, at *6 n. 7 (S.D.N.Y. Jan. 13, 2020) (stating that "some courts in this district and elsewhere have held that motions to compel arbitration are properly brought under Rule 12(b)(1)"). Defendants therefore bring this motion as one to compel arbitration and dismiss the complaint pursuant to 12(b)(1), or in the alternative stay proceedings pending completion of the Beth Din proceeding.

agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). A court must look to "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 106 (2018) (quoting *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (1977)). And while there must be a "manifestation of mutual assent to essential terms," "not all terms of a contract need be fixed with absolute certainty… [as] parties also should be held to their promises and courts should not be pedantic or meticulous in interpreting contract expressions." *Express Indus.*, 93 N.Y.2d at 589-90 (quotations omitted). In analyzing a contract's consideration, "mutual promises to arbitrate constitute[ ] consideration sufficient to support [an] arbitration agreement." *Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005); *see also Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("[Appellant's] promise to arbitrate was sufficient consideration to support [appellee's] promise to arbitrate.").

Here, there is no question that Plaintiffs and Defendants agreed to arbitrate their dispute before a Beth Din. Plaintiffs stated in their Verified Complaint that they are "bound to bring their dispute in the first instance to a Beis Din,"[3] and that they intended to "serve Defendants with a

---

[3] "Beth Din" (also referred to as "Beis Din") is a "rabbinic court that serves the Jewish community of North America as a forum for arbitrating disputes through the Din Torah process according to Jewish law. The Beth Din regularly arbitrates a wide range of disputes among parties, ranging in value from small claims to litigation involving several million dollars…The Beth Din conducts its proceedings in a manner that is consistent with the requirements of secular arbitration law, so that the rulings of the Beth Din are legally binding and enforceable in the secular court system." *BankUnited, N.A. v. Blue Wolf Investments, LLC*, No. 118CV8196JGKKHP, 2019 WL 3416084, at *1 n. 2 (S.D.N.Y. July 1, 2019) (noting that a Beth Din arbitration decision was thereafter "confirmed as a judgment by the New York State Supreme Court"),

hazmanah – the Beis Din equivalent of a summons – commanding Defendants' appearance before the Beth Din." Compl. ¶ 108.[4] Plaintiffs further stated that they only "intend to pursue their claims in this Court *until such time as Defendants comply with the hazmanah and submit to the jurisdiction of the Beth Din* for the resolution of the parties' dispute." *Id.* (emphases added). In response, Fisch clearly manifested an assent to the essential terms, writing to this Court that he is "willing to bring our dispute to a Beis Din." ECF No. 11 at ¶ 2. Fisch then clarified that he had "already issued a Rabbinical Court Summons seeking to call Mr. Weiss to the Beis Din." *Id.; see also* ECF No. 11-1.

Both parties are now bound by their statements as judicial admissions. Judicial admissions "are formal concessions in the pleadings…that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (citing 2 McCormick on Evid. § 254 (6th ed. 2006)); *see also Roxborough Apartments Corp. v. Kalish*, 909 N.Y.S.2d 862, 864 (1st Dep't 2010) ("Statements made in a pleading verified by a person with personal knowledge of the content of the statements are formal judicial admissions, which dispense with the production of evidence and concede, for the purposes of the litigation in which the pleading was prepared, the truth of the statements."). Upon a judicial admission, a party "is bound throughout the course of the proceeding" to their statement. *Setevage v. Dep't of Homeland Sec.*, 539 F. App'x 11, 13 (2d Cir. 2013).

Both Plaintiffs and Defendants have agreed to essential terms of their agreement: the dispute regarding the ownership and management of Medrite Care and the other Medrite entities must be properly adjudicated before a Beth Din. That there may be negotiations between the

---

*report and recommendation adopted*, No. 18-CV-8196 (JGK), 2019 WL 3409398 (S.D.N.Y. July 26, 2019).

[4] The summons is dated May 5. *See* ECF No. 21-2.

parties as to what specific Beth Din to appear before should not disturb the Court's decision to compel arbitration, as a "contract is not necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (analyzing New York law). Indeed, under New York law, a disagreement over which specific forum in which to arbitrate is not enough to invalidate an otherwise enforceable agreement to arbitrate. *See Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*, 434 N.Y.S.2d 359 (1980).

In *Lory Fabrics*, the "parties indicated their intention to arbitrate before a textile industry arbitration council," but had not agreed as to which one. *Id.* at 364. The trial court therefore "order[ed] that arbitration was to proceed before the General Arbitration Council of the Textile Industry." *Id.* The First Department affirmed the lower court's order compelling arbitration at the General Arbitration Council "not because it was so provided in [the] arbitration clause, but because both parties indicated their intention to arbitrate before a textile industry arbitration council, and the General Arbitration Council was the industry council in New York City." *Id.* (also finding that, like federal law, "New York law, too, favors arbitration").

Likewise, in *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 908 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978), the parties had designated "the New York Chamber of Commerce (NYCC) to arbitrate disputes arising thereunder." But "the New York Chamber of Commerce ceased to arbitrate disputes" at the time the parties began to litigate. *Id.* Respondent then argued that "that the naming of NYCC was an integral part of the substantive rights bargained… and that in light of [NYCC's] inability to hear the dispute, the agreement to arbitrate has been vitiated and the petition must be dismissed." *Id.* at 909. The court rejected this argument, instead recognizing the "view of the federal policy to construe liberally arbitration clauses and to

resolve doubts in favor of arbitration," finding an agreement to arbitrate still existed, and empowering itself to appoint an arbitrator. *Id.* at 910-11.

Here, while Plaintiffs and Defendants need to iron out which Beth Din panel will decide their arbitration, there is no question that the parties agreed that a Beth Din is the appropriate forum for their dispute. Given this "manifestation of mutual assent to essential terms," the Court should find a valid agreement between the parties to arbitrate their dispute, and compel them to bring their dispute before a Beth Din.

### III.  CONCLUSION

Because Plaintiffs and Defendants have agreed to have this dispute settled by a Beth Din, the Court should compel the parties to arbitration and dismiss the complaint, or in the alternative, stay the proceedings.

Dated: May 15, 2020
      New York, New York

/s/ *Neil Steiner*
Neil Steiner
Pat Andriola
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500