**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEDRITE CARE, LLC, MEDRITE 22ND        :
LLC, MEDRITE 72 LLC, MEDRITE BH LLC,   :
MEDRITE MIDTOWN WEST LLC, AND          :
HENRY WEISS individually and derivatively :
on behalf of MEDRITE CARE, LLC,        :
MEDRITE 22ND LLC, MEDRITE 72 LLC,      :
MEDRITE BH LLC AND MEDRITE             :
MIDTOWN WEST LLC,                      :
                                       :
              Plaintiffs,              :
                                       :
      v.                    :
                                       :
MEDRITE 243 LLC, MEDRITE EAST SIDE     :
LLC MEDRITE HAVERSTRAW LLC,            :
MEDRITE HOLDINGS LLC, MEDRITE LLC,     :
MEDRITE MANAGEMENT LLC, MEDRITE        :
MTVERNON LLC, MEDRITE MYRTLE           :
LLC, MEDRITE NYC LLC, MEDRITE          :
SPRING VALLEY LLC, NEW MEDRITE         :
CARE NEW YORK INTERNATIONAL LLC,       :     Civil Action No. 1:20-cv-3456 (MKV)
MEDRITE 41 LLC, MEDRITE MEDICAL        :
CARE, PA, SUPREME MEDICAL              :
MANAGEMENT LLC and SAMUEL              :
FISHMAN a/k/a SAMUEL FISCH,            :
                                       :
              Defendants,             :
                                       :
          and                  :
                                       :
MEDRITE CARE, LLC, MEDRITE 22ND        :
LLC, MEDRITE 72 LLC, MEDRITE BH LLC,   :
and MEDRITE MIDTOWN WEST LLC,          :
                                       :
              Nominal Defendants.     :
............................................................ :
SAMUEL FISHMAN a/k/a SAMUEL FISCH      :
                                       :
              Counter-Plaintiff and   :
              Third-Party Plaintiff,  :
      v.                    :
                                       :
HENRY WEISS,                           :

```
                                              :
                 Counter-Defendant,           :
                                              :
          and                                 :
                                              :
EVA WEISS,                                    :
                                              :
                 Third-Party Defendant.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION BY DEFENDANTS TO COMPEL ARBITRATION AND
DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE,
STAY THE PROCEEDINGS**

DECHERT LLP
Neil Steiner
Pat Andriola
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.      ARGUMENT ................................................................................................... 2

      A.     There is a Valid Agreement to Arbitrate ........................................... 2

            1.     Plaintiffs' Offer Was Accepted ........................................... 2

            2.     The Parties Agreed To All Essential Terms .......................... 4

            3.     A Particular Beth Din Need Not Be Chosen Prior to an Order Compelling Arbitration ...................................................... 6

      B.     The Parties Should be Compelled to Arbitration Immediately ........................... 9

      C.     The Criminal Matter is Irrelevant ................................................... 9

II.     CONCLUSION ............................................................................................10

# TABLE OF AUTHORITIES

## CASES

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*,
    78 N.Y.2d 88 (1991) ...................................................................................................4

*Astra Footwear Indus. v. Harwyn Int'l, Inc.*,
    442 F. Supp. 907 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978) ........................7

*Banks v. Am. Tract Soc.*,
    1847 WL 4510 (N.Y. Ch. 1847) ...............................................................................3

*Carr v. Sheehan*,
    51 N.Y.S.3d 293 (N.Y. App. Div. 2017) ................................................................3

*Caruso Glynn, LLC v. Sai Tr.*,
    No. 11 CV 4360 VB, 2012 WL 4053802 (S.D.N.Y. July 9, 2012)........................2

*Credit Suisse First Bos. Corp. v. Pitofsky*,
    4 N.Y.3d 149 (2005) .................................................................................................6

*Greenwich Capital Fin. Prod., Inc. v. Negrin*,
    903 N.Y.S.2d 346 (2010) .........................................................................................4

*Gutfreund v. Weiner (In re Salomon Inc. Shareholders' Derivative Litig.)*,
    68 F.3d 554 (2d Cir. 1995) ...................................................................................5, 6

*In re Congregation Birchos Yosef*,
    535 B.R. 629 (Bankr. S.D.N.Y. 2015)....................................................................7

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) .....................................................................................8

*Kowalchuk v. Stroup*,
    873 N.Y.S.2d 43 (2009) ...........................................................................................2

*Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*,
    434 N.Y.S.2d 359 (1980) .........................................................................................7

*Marshall v. Khan*,
    860 N.Y.S.2d 693 (2008) .........................................................................................7

*Morelli v. Alters*,
    No. 1:19-CV-10707 (GHW), 2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020) .........4

*PaineWebber, Inc. v. Rutherford*,
    903 F.2d 106 (2d Cir. 1990) .....................................................................................7

*Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*,
No. 99 CIV. 0441 (DAB), 2000 WL 1457079 (S.D.N.Y. Sept. 28, 2000) ............................5

*Ruiz v. New Avon LLC*,
No. 18-CV-9033 (VSB), 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019),
*appeal withdrawn sub nom.*, No. 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22,
2020)...........................................................................................................................................6

*Vaad Hakashrus Crown Heights Inc. v. Braun*,
No. 15-CV-5857 (FB), 2017 WL 10180422 (E.D.N.Y. Jan. 12, 2017) .................................7

*Wework Companies Inc. v. Zoumer*,
No. 16-CV-457 (PKC), 2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016)................................4, 5

*Winston v. Boisclair*,
No. 88 Civ. 7836 (RJW), 1991 WL 150613 (S.D.N.Y.1991) .................................................5

## OTHER AUTHORITIES

NY CPLR 2104 ....................................................................................................................................3

## PRELIMINARY STATEMENT

Defendants' opening brief demonstrated that the parties' judicial admissions – the unequivocal offer in paragraph 108 of Plaintiffs' complaint and Defendants' declaration promptly filed in response thereto – created a binding agreement to arbitrate their dispute before a Beth Din, a Jewish Rabbinical Court.[1] Despite their representation to this Court that they are "bound to bring their dispute in the first instance to a Beis Din" and that they would litigate in Court only "until such time as the Defendants comply with the hazmanah" to be issued by Plaintiffs, Plaintiffs now contend that this was actually a "purported" offer that could only be accepted by Defendants if Defendants also agreed to submit to the Beth Din selected by Plaintiffs. But the offer in paragraph 108 is not conditioned on arbitrating before Plaintiffs' choice of Beth Din, nor could it be – such a condition would be inconsistent with the procedure for selecting a Beth Din under Jewish Law and contrary to the plain language of the hazmanah actually issued by Plaintiffs. Nor does the alleged physical altercation between the parties – which the Court has already warned is unrelated and irrelevant to the dispute at hand – vitiate the already-accepted offer to arbitrate. Although the parties have not yet agreed on a particular Beth Din to hear and decide their claims, the procedure for doing so is specified by Jewish Law. And the law in this Court is clear: that logistical hurdle is insufficient to set aside the parties' otherwise valid agreement to arbitrate.

---

[1]     Capitalized terms not defined herein are defined in Defendants' initial Memorandum of Law (ECF No. 32) ("Mot. Br.").

I.      **Argument**

A.      **There is a Valid Agreement to Arbitrate**

1.      **Plaintiffs' Offer Was Accepted**

Throughout their brief, ECF No. 45 (Plaintiffs' Opposition Brief) ("Opp. Br."), Plaintiffs resort to calling Paragraph 108 of the Complaint ("Paragraph 108") a "purported offer." *Id.* at 6-7. But there is nothing "purported" about it. The plain terms of Plaintiffs' judicial admission in Paragraph 108 constitute an offer to arbitrate. Plaintiffs provide no analysis or case law to the contrary. Indeed, Paragraph 108 was so conspicuous that this Court specifically requested that Defendants answer it. ECF No. 6 at 4. And Defendants promptly responded to Paragraph 108 just two days after the Complaint was served by *accepting the offer to arbitrate and agreeing that their dispute belonged before a Rabbinical Court*. ECF No. 11 ¶ 2.

Plaintiffs contend, however, that their offer was "never unequivocally accepted" by Defendants because by "offering instead to arbitrate in a different Beis Din, Defendants' response constitutes both a rejection and a counteroffer which extinguishes the original offer." Opp. Br. at 6-7. But Defendants did no such thing. Paragraph 108 does not specify any particular Beth Din. *See* Comp. ¶ 108. Defendants accepted Plaintiffs' offer by stating that they are "willing to bring our dispute to a Beis Din." ECF No. 11 ¶ 2. "[T]he moment of acceptance is the moment the contract is created." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 47 (2009).

Indeed, the hazmanah (summons) served by Plaintiffs in accordance with the offer in Paragraph 108 does not require Defendants to submit to the issuing, or any other particular, Beth Din. Rather, consistent with accepted Jewish Law, the hazmanah required Defendants to submit the parties' dispute concerning the Medrite Entities to either the issuing Beth Din or to "*a Rabbinical Court that is acceptable to both parties.*" ECF No. 30-7 at 3 (emphasis added). Defendants' issuance of a summons from their own rabbinical court, ECF No. 11-1, was not a

rejection of Plaintiffs' offer and a counteroffer; it was simply the next step in the Jewish Law process of finding a mutually acceptable Beth Din. As explained in the declaration[2] of Rabbi Gershon Spiegel, submitted herewith, ("Spiegel Dec."):

> Jewish Law does not give a plaintiff the automatic right to the venue of his first choice. Instead, a Rabbinical Court states in its summons that the defendant is required to appear before the Rabbinical Court of the plaintiff's choosing or another recognized Beth Din mutually acceptable to both parties. After a Beth Din issues a Hazmana, the recipient (*i.e.*, the defendant) has two options. He or she may appear before the Beth Din that issued the Hazmana. Alternatively, he or she may offer to proceed before another recognized Beth Din (the "Alternate Beth Din"). Upon being offered an Alternate Beth Din, the plaintiff who contacted the first Beth Din may agree to proceed before the Alternate Beth Din or ask that the case be heard by a Zablo Beth Din.[3]

Spiegel Dec. ¶¶ 3-4. Rabbi Spiegel further confirmed that the "practice of selecting between the primary Beth Din, the Alternate Beth Din, or a Zablo Beth Din is standard across the Jewish Orthodox community and does not vary based on the Beth Din chosen." *Id.* ¶ 7. Now that Defendants have served their own summons, Plaintiffs can either "accept the Rabbinical Court [chosen by Defendants] as venue, [] accept a mutually acceptable Alternate Beth Din, or [] submit the dispute to Zablo Beth Din." *Id.* ¶ 6. And Rabbi Spiegel explained that based on his knowledge of other Rabbinical Courts on which Rabbi Gruber (the Rabbi appointed by Plaintiffs) has served, and other Rabbinical Arbitrators with whom Rabbi Gruber has served, he would expect the parties to have little difficulty forming an appropriate Beth Din in accordance with the procedures for doing so under Jewish Law. *Id.* ¶ 7.

---

[2]     "Courts may properly consider documents outside the pleadings when faced with a motion to compel arbitration." *Caruso Glynn, LLC v. Sai Tr.*, No. 11 CV 4360 VB, 2012 WL 4053802, at *5 (S.D.N.Y. July 9, 2012).

[3]     In a Zablo Beth Din, "each party selects one Rabbinical Court Judge and the two (2) selected Judges pick a third (3rd) impartial Rabbinical Court Judge to form a panel. The Zablo Beth Din then hears the case and rules by majority decision." *Id.*

Plaintiffs' offer to proceed before a mutually agreeable Beth Din was accepted on the terms presented to Defendants. Defendants' issuance of a summons thereafter was not only standard practice under Jewish law, but expressly contemplated by the language of Plaintiffs' offer and accompanying summons.

### 2.    The Parties Agreed To All Essential Terms

Plaintiffs claim that there was "no meeting of the minds on *any* essentials terms of a purported arbitration agreement." Opp. Br. at 4 (emphasis added). Yet that is belied by the plain language of Plaintiffs' statement to this Court that they are "bound to bring their dispute in the first instance to a Beis Din – a Jewish court of law" and would bring their claims in this Court only until Defendants submitted to the jurisdiction of a mutually agreeable Beth Din. Comp. ¶ 108. Defendants, in turn, agreed to bring the matter to a Jewish court of law. ECF No. 11 ¶ 2. The essential terms of the agreement are thus clear: "the dispute regarding the ownership and management of Medrite Care and the other Medrite entities must be properly adjudicated before a Beth Din." Mot. Br. at 6. Under New York contract law, nothing more is required to compel the parties to arbitration. *See Wework Companies Inc. v. Zoumer*, No. 16-CV-457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (granting motion to compel arbitration because although "the arbitration clause in the present case is admittedly terse, the language indicates that the parties agreed to be bound" and the "failure to include specific details on the procedure of the arbitration is not fatal to the clause's validity.").

Plaintiffs' contention that the contract be considered null and void under the doctrine of definiteness falls flat, as "[s]triking down a contract as indefinite and in essence meaningless is at best a last resort." *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991) (quotations omitted). Plaintiffs identify nine procedural areas regarding the arbitration to which the parties allegedly have not yet agreed, including such relatively minor concerns as "whether

English or another language should be used," "the number of arbitrators," and the "procedural law that will apply." Opp. Br. at 5.[4] First, it is standard in Jewish Law that these "questions are fully answered when the parties consent on the mutually acceptable [Beth Din.]" Spiegel Dec. ¶ 10. Second, "[c]ourts within this circuit have routinely rejected the argument that the procedural rules governing arbitration—including the forum, binding nature, and rules of discovery—constitute essential terms." *Morelli v. Alters*, No. 1:19-CV-10707 (GHW), 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020) (citing *Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*, No. 15-CV-89 (ER), 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015)) (collecting cases at n. 5). "The lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements." *Wework*, 2016 WL 1337280, at *5. Plaintiffs' concerns will therefore be addressed either by the Jewish Law procedures for forming a Beth Din pursuant to the parties' agreement, or through the FAA's gap-filling measures.[5]

---

[4]     Plaintiffs' one substantive concern—that the parties did not agree as to what issues would be arbitrated, Opp. Br. at 5-6—is nonsensical: Plaintiffs' offer came *in their Complaint*, and refers to "[Plaintiff's] claims" and "Plaintiffs' dispute." A contract "should not be interpreted to produce a result that is absurd." *Greenwich Capital Fin. Prod., Inc. v. Negrin*, 903 N.Y.S.2d 346, 348 (2010). The issues for arbitration are of course the same as those in the Complaint. And that is precisely what the hazmanah served by Plaintiffs provides -- the claim is about the Medrite company.

[5]     Likewise, Plaintiffs' assertion that a contract cannot be made through judicial admissions or court filings, Opp. Br. at 2, has no basis. In fact, New York courts recognize contracts made through submissions to the Court, as codified in NY CPLR 2104. As the commentary to CPLR 2104 explains: "Nothing smooths the course of litigation like cooperation among opposing counsel, implemented through stipulations. The parties may freely stipulate on most (but not all) aspects of a lawsuit. Stipulations are favored by judicial policy." Comment C2104:1 (emphasis added). *See also Banks v. Am. Tract Soc.*, 1847 WL 4510 (N.Y. Ch. 1847). ("A stipulation or engagement, made by a party in the face of the court, touching the subject matter of the litigation; *is a contract with the court as well as the adverse party, which the court is bound to enforce for the protection of the latter*.") (emphasis added). The form of the agreement is unimportant, as even oral

### 3.    A Particular Beth Din Need Not Be Chosen Prior to an Order Compelling Arbitration

Plaintiffs contend that they "did not intend to be bound absent agreement on a mutually acceptable Beis Din." Opp. Br. at 7-9. Yet, as discussed above, Plaintiffs did not specify any particular Beth Din in their offer to arbitrate. *See* Section I.A.1 *supra*. As a basic matter of contract interpretation, "if the [particular Beth Din] was a critical term, as [Plaintiffs] now claim[], it should have been reflected in the language of the contract." *Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*, No. 99 CIV. 0441 (DAB), 2000 WL 1457079, at *4 (S.D.N.Y. Sept. 28, 2000). *See also Winston v. Boisclair*, No. 88 Civ. 7836 (RJW), 1991 WL 150613, at *6 (S.D.N.Y.1991) (finding that if a term "is so important as to be the sole reason for [] entering into the contract, then that should have been made clear by the language of the contract.").

Defendants have already set out clear precedent under New York law that when parties agree to arbitrate, a court should compel arbitration even when the parties have yet to agree on a specific forum. *See* Mot. Br. at 6-8 (citing *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 908 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978) and *Lory Fabrics, Inc. v. Dress Rehearsal, Inc.*, 434 N.Y.S.2d 359 (1980)). Plaintiffs contend instead that the choice of Beth Din cannot be severed from the agreement to arbitrate, and that the Court should therefore find that there is no contract. Opp. Br. at 7-9. Plaintiffs rely on two Second Circuit opinions for their proposition. Both are inapposite.

First, in *Gutfreund v. Weiner (In re Salomon Inc. Shareholders' Derivative Litig.)*, 68 F.3d 554, 561 (2d Cir. 1995), the district court *granted* a motion to compel arbitration before the New

---

agreements between counsel in the presence of the court are enforceable contracts. *See Carr v. Sheehan*, 51 N.Y.S.3d 293, 295 (N.Y. App. Div. 2017) (dismissing party's "contention that the stipulation was simply 'an agreement to agree'").

York Stock Exchange ("NYSE").  *Id.* at 555.  Yet after "plaintiffs vigorously contended that the matter was not arbitrable and that the NYSE should decline to arbitrate it," the NYSE invoked its discretionary power and declined to arbitrate.  *Id.* at 556.  Defendants then asked for an order "appointing substitute arbitrators under § 5 of the FAA," but the court declined "defendants' invitation to appoint substitute arbitrators over the plaintiffs' objection."  *Id.* at 556; 561.  The Second Circuit upheld the district court's decision, finding that a court cannot "circumvent the parties' designation of an *exclusive arbitral forum*" by appointing new arbitrators.  *Id.* at 561 (emphasis added).  To be clear: Defendants are not asking this Court to appoint any arbitrators under § 5 of the FAA.  Instead, Defendants request an order compelling the parties to settle their dispute before a Jewish court of law, as the parties agreed, and to select a proper Beth Din pursuant to the established Jewish Law procedures.  *See* ECF No. 34.  The Circuit's finding that "the failed [forum selection] term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself," *Gutfreund*, 68 F.3d at 561, was in consideration of the fact that arbitration in that case would not be before the NYSE whatsoever.  Here, the forum selected by the parties—a Jewish court of law—is certainly available.  *See* Spiegel Dec. ¶ 9.  Plaintiffs, therefore, are the ones attempting to "circumvent the parties' designation of an exclusive arbitral forum," *Gutfreund*, 68 F.3d at 556, by reneging on their agreement to arbitrate before a rabbinical court.[6]

---

[6]     Plaintiffs' reliance on a forum selection clause in the Medrite Entities' Operating Agreement, Opp. Br. at 1-2, is also misplaced.  First, Paragraph 108 makes clear that Plaintiffs do not believe this Court is an exclusive forum that the parties cannot contract around.  And second, per the "established principles of contract law" in New York, a newly formed arbitration agreement supersedes a prior version.  *Credit Suisse First Bos. Corp. v. Pitofsky*, 4 N.Y.3d 149, 154 (2005).  *See also Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *7 (S.D.N.Y. Sept. 22, 2019), *appeal withdrawn sub nom.*, No. 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22, 2020) (recognizing the

Likewise, in *PaineWebber, Inc. v. Rutherford*, 903 F.2d 106 (2d Cir. 1990), the appellant had agreed "to arbitrate before the American Arbitration Association [("AAA")] in the City of New York." *Id.* at 108. Appellant then tried to arbitrate in the Orlando, Florida office of AAA. *Id.* The district court ruled, and the Second Circuit affirmed, that the phrase "American Arbitration Association in the City of New York" was a forum selection clause, and that if appellant chose to arbitrate, they must do so in New York City, and not Orlando. *Id.* at 109. The difference between *PaineWebber* and the present facts is obvious: there was no such forum selection clause in Paragraph 108.[7] Plaintiffs never referred to any specific forum besides "Beis Din," defined broadly as "a Jewish court of law" in their offer. Compl. ¶ 108.[8]

As *Astra Footwear* and *Lory Fabrics* make clear, under New York contract law, when the parties have agreed to essential terms, courts should "endeavor to hold the parties to their bargain." *Marshall v. Khan,* 860 N.Y.S.2d 693, 694 (2008). Therefore, an order compelling the parties to bring their dispute before a Jewish court of law—with the parties to agree to which particular Beth Din to appear before—is appropriate.

---

"well-established principle under New York law that a subsequent contract regarding the same matter will supersede the prior contract") (quotations omitted).

[7]  *PaineWebber* is instructive: if Plaintiffs so cared about the particular Beth Din to resolve this dispute, they would have named it in Paragraph 108 as an explicit condition of their offer, as the appellee did in *PaineWebber*.

[8]  Indeed, specific Beis Dins are typically referred to by their location and/or proper title. *See, e.g., Vaad Hakashrus Crown Heights Inc. v. Braun*, No. 15-CV-5857 (FB), 2017 WL 10180422, at *1 (E.D.N.Y. Jan. 12, 2017) (referring to "the Beis Din of Crown Heights"); *see also, e.g., In re Congregation Birchos Yosef*, 535 B.R. 629, 631 (Bankr. S.D.N.Y. 2015) (referring to "specifically, Beis Din Mecho L'Hora'ah" rather than the more general "beis din, or Jewish religious court."). Here, Plaintiffs solely referred to "Beis Din – a Jewish court of law." Comp. ¶ 108.

### B. The Parties Should be Compelled to Arbitration Immediately

Plaintiffs request that if the Court finds (as it should) an agreement to arbitrate, the matter remain active before this Court until a Beth Din panel is established. Opp. Br. at 2. Yet Plaintiffs cite no authority for their proposition that the federal courts may be used as a *de facto* discovery mediator until an arbitration panel has been established. Indeed, the FAA's underlying policy is "to move the parties to an arbitrable dispute *out of court and into arbitration as quickly and easily as possible*." *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) (emphasis added) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). The Court should therefore compel arbitration and dismiss the complaint (or in the alternative, stay this matter).

### C. The Criminal Matter is Irrelevant

Finally, Plaintiffs once again inappropriately raise a separate, state court criminal matter involving the parties. Opp. Br. at 10. Plaintiffs claim that because of the pending criminal claim, it is unlikely that the parties will be able to come to mutual terms on a Beis Din. *Id.* This is unduly pessimistic; the parties' counsel have been consistently in contact throughout this dispute and can surely negotiate on behalf of the parties. Likewise, this Court has already warned that the "alleged altercation between Weiss and Fisch…and any attendant criminal repercussions, have *no bearing on the matter before this Court*." ECF No. 42 (emphasis added). The criminal matter is irrelevant to the parties' agreement to arbitrate this dispute.

## II.    CONCLUSION

Because the parties have agreed to bring this dispute before a Beth Din, and Jewish Law provides procedures for selection of an appropriate Beth Din tribunal, the Court should compel the parties as such and dismiss the complaint, or in the alternative, stay the proceedings.

Dated: June 4, 2020
New York, New York

/s/  Neil Steiner
Neil Steiner
Pat Andriola
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500